## RYAN and NEVINS *vs.* DOX.

The equitable rule that parol evidence is admissible to show that a deed absolute in its terms was intended only as a mortgage, does not extend to an official conveyance.

The parol evidence contemplated is always upon the question of the intention of the parties to the conveyance. And a sheriff, master, or other officer selling property under a process, decree or judgment of the court, cannot make a valid agreement with a purchaser to convey any other estate than such as the judgment or decree will warrant.

Where, upon a sale of premises by a master in chancery, under a decree of foreclosure, the precise conveyance was executed by him, to the purchaser, which the parties contemplated, the court cannot reform the deed by giving it a defeasible character, upon parol evidence that the parties so intended; or adjudge that the grantee took an estate or interest in the premises, by virtue of it, which was subject to be defeated by the payment of money to him, by another person.

An agreement between a mortgagor, whose land is about to be sold by a master, under a decree of foreclosure, and another person, that the latter shall purchase the premises, and take a deed thereof in his own name, and that he will

Ryan *v.* Dox.

afterwards convey the same to the mortgagor, upon receiving the amount of his bid with interest &c., is an agreement for the sale of land, and unless manifested by writing, is void by the statute of frauds.

APPEAL from a judgment entered upon the report of a referee. The complaint stated that the plaintiff Ryan, about the 3d of May, 1839, purchased and became seised in fee simple of certain premises and real estate therein described, situated in the village of Geneva in the county of Ontario. That on the same day Ryan paid a portion of the purchase money down, and executed and delivered a mortgage upon the same premises to one William W. Watson, to secure the payment of $800, the balance of the purchase money, payable in installments. That on the 1st day of October, 1841, Ryan conveyed to the plaintiff Nevins an equal undivided half of the said premises. That afterwards and in the year 1842, Watson commenced an action in the court of chancery, before the vice chancellor of the seventh circuit, against the plaintiffs, to foreclose the said mortgage, and obtained a decree of foreclosure and sale of the mortgaged premises, which decree bore date July 25th, 1842. That the premises were advertised for sale under such decree, and were likely to be sold, when these plaintiffs obtained from one Lewis $300, which was paid to Watson on the decree, who assigned to said Lewis a share in said decree to the amount of $300. That no sale or further action was had under the decree until about August 23, 1843, when the said Lewis becoming urgent for the payment of the said $300, so paid by him, the decree was put into the hands of a master in chancery, to advertise and sell the mortgaged premises. The master advertised the same for sale on the 12th day of October, 1843, for the purpose of raising only about $300 and costs, while the premises were worth the sum of $4000. That while said premises were thus advertised for sale, and before the day of sale had arrived, the plaintiffs, being men of limited means and unable to raise the money necessary to prevent a sale, applied to the defendant Dox, who was reputed to be a man possessed of ready money, to assist them to raise the money to pay the amount due on the decree; whereupon the defendant agreed with the plaintiffs, that on the

day of sale of said premises by the master, under the decree, he would attend the sale and bid off and purchase the mortgaged premises, with the express agreement and understanding between the plaintiffs and the defendant, that such purchase so to be made by the defendant should be made for the benefit of the plaintiffs ; and that upon such agreement and understanding the plaintiffs agreed that they would not find any other person to act as their friend at said sale ; and that it was agreed between the plaintiffs and the defendant that if the latter became the purchaser of the premises at such sale he should take the deed of the same from the master in his own name, but only by way of and as security to himself for what money he should have to advance and pay on said purchase, and with the agreement between the plaintiffs and defendant, that whenever the plaintiffs should repay the defendant the amount which he should be obliged to pay to procure and effect the purchase of the premises and to get a deed therefor, together with interest thereon, and a reasonable compensation for his time and trouble, he the defendant would convey the premises to the plaintiffs so as again to vest the title thereto in them, and should in the mean time hold the premises in his own name, only as security for the said moneys, and always subject to the said agreement and defeasance.   That in pursuance of the said agreement the defendant bid off and purchased the mortgaged premises at the master's sale, on the 25th day of October, 1843, for the sum of $100, and the same were thereupon conveyed by the master to the defendant.   The complaint alleged that many persons attended the said master's sale, and that it was then and there understood by the persons so attending, that the defendant was bidding for the benefit of these plaintiffs, and that the premises were struck off to him only as security to him for the repayment of the moneys he should advance and pay for the same, with interest and his reasonable charges for giving his attention and time thereto.   And the plaintiffs alleged that such was the fact, and that the defendant took the master's deed in his own name only as such security, and subject to the condition and defeasance aforesaid.   That in consequence of such understanding other

persons abstained from bidding at such sale, and the premises were struck off to the defendant without any opposing bids, for the sum aforesaid, although the premises were worth rising of $4000. And the plaintiffs averred that if they had not relied on the aforesaid agreement of the defendant as above set forth, they would not have allowed the premises to be sold for $100, or for the amount sought to be raised on the sale, but could and would have found other persons to assist them in purchasing the premises and saving the same from sacrifice.

The complaint further alleged that from the time of the said master's sale they continued in possession of the premises, using and occupying the same as they had always done, until some time in the year 1849, making payments on the said decree or on the incumbrance on said premises yearly, being the interest on the balance due on the same, with the knowledge, privity and consent of the defendant, which payments amounted, as they were informed and believed, to about the sum of $350, the last of which payments was made in the month of May, 1849; and that during all of this time the defendant never exercised any acts of ownership over the premises, nor interfered with the ownership, use, occupation or possession thereof by the plaintiffs; and that during all of that time the premises were assessed for village, county, state and school taxes to the plaintiffs as the owners thereof, and the taxes thereon were paid by the plaintiffs, with the knowledge, privity and assent of the defendant. That in the spring or summer of 1849, the owner of the decree was pressing for the balance due thereon; that the defendant then pretended to the plaintiffs that to procure the means of paying the same, it was necessary to lease the premises so that the rent might be applied to the payment thereof, and that to bring about the leasing of said premises it would be necessary for the plaintiffs to give up the possession thereof to the lessee or lessees of the same, and that thereby enough might be realized in a little time by way of rent, to pay off the said incumbrance and the advances and charges of the defendant, and the premises could then come back and be reconveyed to the plaintiffs, free and clear of incumbrance; and that the plaintiffs, moved

and induced solely by these representations, agreed to lease the said premises, and moved off and gave up the possession to the lessees thereof. That after the premises were leased, the defendant treated the plaintiffs as the real owners thereof, and consulted them about repairs, and made such repairs as the plaintiffs assented to, and refrained from such as the plaintiffs objected to. The complaint also alleged that the defendant had received as rent for said premises before the commencement of this action, a large sum of money, which the plaintiffs were informed and believed amounted to $1000, and that said defendant had never paid any part thereof upon the said decree, but had retained and applied the same to his own use, and that the said decree was now held and owned by one George Crozier, who claimed that the same was a valid security for the sum of over $600. The plaintiffs, in the complaint, claimed that the moneys received by the defendant as aforesaid for the rent of said premises, since the year 1849, amounted in the whole to a sum more than sufficient to repay him the amount paid by him on the master's sale, with interest thereon and all reasonable charges and commissions, &c. The complaint contained statements of various applications made by the plaintiffs to the defendant for an accounting and settlement of the aforesaid matters, and of the defendant's refusing or evading such applications on various pretexts therein set forth ; and asked judgment in their favor against the defendant, and that he be ordered to account to them concerning the said purchase, and his advances and interest thereon by reason of such purchase, and to state his charges and commissions, &c. against the plaintiffs, and to render an account for the rents as aforesaid, and for all moneys received by him, for or by reason of the said premises and his ostensible title thereto ; and that the defendant convey to the plaintiffs the said premises, by such deed as would pass to them the title thereto ; and the plaintiffs asked for such other or further or different relief in the premises as might be agreeable to equity and good conscience.

The answer of the defendant denied specifically and circumstantially, the entire equity of the complaint, and the agreements charged therein to have been entered into by the defendant with

Ryan *v.* Dox.

the plaintiffs, and contained various statements of new matter by way of defense to the equitable relief claimed in the complaint, which are not necessary to be here stated; to which answer the plaintiffs replied, in substance denying the new matters stated in the answer.

The cause was referred to W. E. Sill, Esq. to hear, try and determine the same, who reported, as a conclusion of law, " that unless the agreement in the complaint in this action, alleged to have been made between the plaintiffs and the defendant, in relation to the purchase by the defendant at the master's sale of the premises in the said complaint mentioned, or some note or memorandum thereof, expressing the consideration, be in writing, the same is void and creates no interest in the plaintiffs in said premises, and cannot be enforced against said defendant in law or equity." And he further reported, as matters of fact, that no proof was made or offered on said trial, by or in behalf of the plaintiffs, of any such agreement in writing, or of any note or memorandum in writing of such an agreement, of any deed, conveyance or instrument in writing, subscribed by the defendant, or his lawful agent, creating or declaring any trust or interest in said premises in favor of said plaintiffs; and that no proof was made, or testimony or evidence offered, or witness produced or sworn, on said trial, on the part of the defendant. The referee therefore reported that the defendant was entitled to judgment of nonsuit against the plaintiffs, with costs. Judgment was entered upon this report in favor of the defendant, from which the plaintiffs appealed.

It appears from a case made by the plaintiffs, that upon the trial before the referee, the plaintiffs offered to prove by parol the agreement set forth in the complaint. The referee, on objection being made to such parol evidence, decided that the same was inadmissible, and excluded the evidence, and the plaintiffs' counsel excepted. The plaintiffs then offered to prove that prior to the sale by the master, as stated in the complaint, the defendant and one Prouty applied to the plaintiff Ryan for further security upon a bond and mortgage from him to them, mentioned in the defendant's answer, and it was agreed there should

be a foreclosure of the mortgage from Ryan to Watson; that the property should be sold; that the defendant and Prouty should bid off the property and hold it as their security for their advances and give the plaintiff the right to redeem; that in pursuance of such agreement the said mortgage was foreclosed and the property sold as stated in the complaint, the defendant becoming the purchaser on such sale; that the plaintiffs continued in the possession of the entire premises until the year 1849, and were still in possession of the portion not leased; that the plaintiffs, since said sale in 1843, had paid and kept up the interest upon a mortgage belonging to the estate of Hugh Watson, mentioned in the pleadings, and had also paid to the defendant the annual interest upon the mortgage held by him and said Prouty. That the plaintiffs had paid taxes and made repairs; that the defendant had frequently, since the master's sale, admitted the premises belonged to the plaintiffs, and had told persons so who had applied to purchase; that the plaintiffs held the defendant's receipts for the moneys paid him as aforesaid; that all such payments were made with the knowledge and consent of the defendant; that he had never called on the plaintiffs in any manner to account for their use of the property, but on the contrary, since the property was leased and he had received the rents, he had accounted for and paid over a part of the same to the plaintiffs; and to show other circumstances tending to prove a continued recognition of the plaintiffs' title and right in the premises, down to the commencement of this action.

This offer, and each and every part thereof, was objected to by the defendant's counsel, the objection was sustained by the referee, and the evidence was excluded, and the plaintiffs' counsel excepted.

*J. C. Smith,* for the appellants.

*B. Davis Noxon,* for the respondent.

*By the Court,* WELLES, J.   It may be regarded as a settled doctrine of courts of equity, that parol evidence is admissible to

show that a deed, absolute in its terms, was intended only as a mortgage. (4 *Kent's Com.* 142, 3*d ed. Strong* v. *Stewart,* 4 *John. Ch.* 167, *and cases there cited. Whittick* v *Kane,* 1 *Paige,* 202. *Van Buren* v. *Olmstead,* 5 *id.* 9. *Hodges* v. *Tenn. Mar. Ins. Co.,* 4 *Selden,* 416.) The rule of law is otherwise. ( *Webb* v *Rice,* 6 *Hill,* 219.)

It seems to me, however, that the equitable doctrine does not extend to an official conveyance. The parol evidence contemplated is always upon the question of the intention of the parties to the conveyance. A sheriff, master, or other officer, selling property under a process, decree or judgment of the court, cannot make a valid agreement with a purchaser to convey any other estate than such as the decree or judgment will warrant. No intention of the parties to such conveyance can give to it an effect other than what the law affixes to it.

Every case which I have met with, where an absolute deed has been treated as a mortgage, was where there had been a loan to, or an indebtedness by, the party executing the deed, and where the deed was intended at the time as a security for the loan or indebtedness. In such cases, an absolute conveyance would not express the intention of the parties, and courts of equity, under the jurisdictional head of *mistake,* would generally reform the deed, by turning it into a defeasible conveyance, and give it effect as such, according to the original intention of the parties. In the case at bar, it is not claimed that there was either fraud, accident, mistake or surprise in the sale to the defendant, by the master, of the premises in question; or that a conveyance by the master should have been made of any different effect than was made. Indeed, none other could have been given by the master. The very conveyance which the parties to this action contemplated, as alleged in the complaint, was in fact given. The idea of the court reforming that deed by giving it a defeasible character, upon parol evidence that the parties so intended, or of the court adjudging that the defendant took an estate or interest in the premises by virtue of it, which was subject to be defeated by the payment of money by the plaintiffs to him, would be something new in equity jurisprudence.

I do not say that it was not competent for these parties to enter into a valid agreement, in view of their expectation that the defendant would become the purchaser at the master's sale, and thereby acquire the title to the premises, which should provide that in such event the defendant would convey to the plaintiffs at such time and upon such terms as the agreement should specify. But such an agreement would be one for the sale of the land, and would be void unless manifested in writing. (2 *R. S.* 134, § 6.) But the fact that the conveyance in this case was precisely what all the parties intended, puts an end to the claim which the plaintiffs now make, that the court shall treat it as an instrument in the nature of a mortgage, or give it any other effect than what its terms import.

My conclusion is, that the parol evidence offered by the plaintiffs, of an agreement between them and the defendant, as set forth in the complaint, was properly excluded by the referee, upon the ground that the allowance of such evidence would have been in direct violation of the statute of frauds. (*Lathrop* v. *Hoyt*, 7 *Barb*. 59. *Cook* v. *Eaton*, 16 *id*. 439. *Getman* v. *Getman*, 1 *Barb. Ch. R.* 499. *Van Alstine* v. *Wimple*, 5 *Cowen*, 162.)

The only tendency of the further offer of evidence by the plaintiffs would have been, if admitted, to show a parol agreement for the sale of the premises to the plaintiffs with a partial performance on their part. Assuming the evidence to have been given as offered—and we can assume nothing more in this connection in favor of the plaintiffs—it would have fallen entirely short of forming grounds for affording any relief to them, upon the case as stated in the complaint. Any judgment the court could give would have to be according to the allegations and proofs. One part of the offer was to prove an agreement by the plaintiffs, with the defendant and Prouty. The agreement set forth in the complaint was between the plaintiffs and the defendant. The other facts offered to be proved are consistent with indulgence granted by the defendant to the plaintiffs. They certainly fail of proving an agreement for a sale of the premises,

or of part performance of any such supposed contract. (*Story's Eq. Jur.* §§ 762, 764.)

Upon the whole we think the judgment should be affirmed, with costs of the appeal.

Ordered accordingly.

[MONROE GENERAL TERM, September 7, 1857. *Johnson, T. R. Strong* and *Welles,* Justices.]