# Rome & Decatur Railroad Co. v. W. J. Sibert, *et al.*

| 97 | 393 |
|----|-----|
| 104 | 281 |

*Petitions for Payment of Claims Against Insolvent Railroad out of Funds in Hands of Receiver.*

1. *Funds in hands of receiver chargeable with moneys paid for benefit of property in his custody.*—Where the sureties on bonds executed by a railroad company, on appeal from condemnation proceedings, are compelled to pay the assessed value of the lands condemned for the use of the railroad, which afterwards becomes insolvent, the sureties are entitled to be repaid out of the funds in the hands of the receiver arising from a sale of such road.

2. *Register not entitled to commissions on sales foreclosing a mortgage made by a receiver.*—Where bills were filed in Georgia and Alabama to foreclose a mortgage on a railroad lying in both States, and a sale of the railroad as a unit having been made by the receiver appointed by the courts of both States, the register is not entitled to commissions on such sale.

3. *Decree from which appeal lies.*—An appeal may be taken from a decree of a Chancery Court ordering the receiver of an insolvent railroad company to pay claims which are adjudged to be chargeable on funds in his hands arising from the sale of the road.

APPEAL from Etowah Chancery Court.

Heard before Hon. S. K. McSPADDEN.

W. J. Sibert and others filed their petition in a cause pending, praying that certain moneys paid by them as sureties on the appeal bonds in proceedings to condemn a right

of way for the Rome & Decatur Railroad Company, be repaid to them out of funds in the hands of the receiver of said road, which petition was granted by the court.

R. A. D. Dunlap, Register in Chancery, also filed his petition in the same cause praying to be allowed the sum of $2,235.50 commissions on the sale of the railroad, which railroad was sold in New York, by the receiver under orders of courts in the States of Georgia and Alabama, where the causes were pending, and the court ordered such commissions paid. From this decree the railroad company appeals.

DENSON & TANNER, and WATTS & SON, for appellant insisted that the law of costs must be strictly construed, citing 1 Brick. Dig. 117, § 6; *Dent v. State*, 42 Ala. 514; 3 Brick. p. 16, § 5; *Tillman v. Wood*, 58 Ala. 579; that the receiver alone was entitled to the commissions: *Beckwith v. Carroll*, 56 Ala. 12; *Scott v. Ware*, 65 Ala. 174; *Haralson v. George*, 56 Ala. 295. That the sureties were not entitled to subrogation.—*Foster v. Athenaeum*, 3 Ala. 302; *Vanderveer v. Ware*, 65 Ala. 606.

DORTCH & MARTIN, for Dunlap, cited Code, Sec. 3600; 2 Barbour 342; 2 Dan. p. 1450; *Gerald v. Miller*, 21 Ala. 433; 62 Ala. 374; 66 Ala. 35; that the order does not support an appeal: *Kitchell v. Jackson*, 71 Ala. 556; 74 *Ib.* 359; 6 Tex. 322; *Smith v. Shaffer*, 50 Md. 132.

STONE, C. J.—The Rome & Decatur Railroad Company was incorporated both in Georgia and Alabama. The purpose of the corporators was to construct and operate a railroad from Rome in the State of Georgia to Decatur in Alabama. Before entering upon the work of constructing the road, the corporate authorities issued bonds, and executed a mortgage to secure the payment of those bonds. That mortgage conveyed their corporate franchise, and all the property of every kind then owned by the corporation, or which it might afterwards acquire in the course of its construction. A bill was filed in the State of Georgia, and an auxiliary bill in the State of Alabama, one purpose of which was to have the railroad placed in the hands of a receiver and to obtain an order for the issue of receiver's certificates, that the work of constructing the road might be pressed to completion. Dorsey was appointed receiver, first by the Georgia court, and following that court, then by the Alabama court. He entered upon the discharge of his duties, issued certificates,

and continued the construction and operation of the road. The road was completed from Rome, Georgia, to Attalla, in Alabama. Callahan was complainant in the original bill.

The American Loan and Trust Company was one of the defendants in each of the suits. With the answers of that defendant were filed cross bills in each of the suits, the purpose and prayer of which were to have said mortgage foreclosed, and the railroad and all its property of every kind sold in payment of the receiver's certificates, and of the mortgage indebtedness. The prayer of the cross bill was granted, first by the court in Georgia; and the decree therein rendered was adopted in substance in the Alabama court. The decrees in each case were, in effect, consent decrees, and by a like consent, it was ordered and decreed that the sale be made in the City of New York, to be conducted and made by Dorsey the receiver. It was so made, and Dorsey reported the sale to, and it was confirmed in each of the courts. No question is raised in the present appeal on any of the matters noted above. They are all acquiesced in.

Since the final decrees in those causes, the sale of the property under them and its confirmation, certain disputes have arisen as to the distribution of the funds, and the chancellor's rulings on those disputes furnish the entire subject of the present appeal, and of the assignments of error.

One of the questions for our consideration and decision arose as follows: In locating the track of the railroad through Etowah county, Alabama, it was made to cross lands owned severally by L. W. Bramlett, E. A. Bramlett and J. C. Leek. The railroad company instituted proceedings, and obtained a condemnation of the right of way across the several tracts of land. Damages were assessed against the railroad, as the value and consideration of such right of way, with which the corporation was not satisfied. It appealed to the Circuit Court from the several awards, and executed appeal bonds under the statute. The petitioners, Wm. J. Sibert and others, became the sureties of the railroad company on these appeal bonds. In April, 1889, these appeal causes came up for trial, and judgments were rendered against the railroad company and their several sureties as follows: In favor of E. A. Bramlett for $309.13-100; in favor of J. C. Leek for $386.41-100, and in favor of L. W. Bramlett for $721.30-100. The railroad being then in the hands of the receiver, executions on these judgments could not be enforced against the railroad company, but could and were against the sureties on the appeal bonds. In this way the petitioners were forced to pay, and did pay for the said right of way for the use and benefit of the railroad company.

[Rome & Decatur R. R. Co. v. W. J. Sibert et al.]

If one lends, or advances money to a debtor, with which a lien on property previously created by the debtor, is discharged, and if there be nothing else in the transaction, the party lending or advancing does not thereby become subrogated to the lien he is thus instrumental in paying off. He becomes a simple contract creditor of the debtor to whom he lends the money.—*Chapman v. Abrahams*, 61 Ala. 108. In such case he does nothing for the benefit or accommodation of the lienee.

In the present case all the accommodation and benefit accrue to the lienee. The mortgage was taken, not alone on property of the railroad company then owned. It included all property to be afterwards acquired. It included the entire railroad—the right of way and superstructure—the one to be afterwards acquired, and the other to be afterwards constructed. This lien, however, was necessarily *in nubibus*—had nothing substantial to operate on—until the right of way was acquired, the grading done and the superstructure erected. Until the right of way was acquired and paid for, or title made, neither the railroad nor the mortgagee could assert a clear title to that part of its track.—Code of 1886, §§ 3216–18; *N. O. & S. R. R. Co. v. Jones*, 68 Ala. 48; *Hooper v. Sav. & Memphis R. R. Co.*, 69 Ala. 529; *Jones v. N. O. & S. R. R. Co.*, 70 Ala. 227. Till then the mortgage to that extent was ineffective.

We have shown that until Sibert and his associate petitioners paid the condemnation money, the right of way over the three tracts of land we are considering was neither in the railroad company nor in the mortgagee. The payment was an indispensable condition to the vesting and perfection of the title. The payment was made by the sureties of the railroad; and if they had not made the payment, the receiver would have been required to pay, and would have paid the assessed damages, out of the money in his hands, proceeds of the sale under the chancellor's decree. This he would have been required to do, and would have done, under the chancellor's decretal orders to that effect rendered November 21, 1889, and February 27, 1890. Claiming and realizing the benefit of the payments so made by them, he must be held to have adopted them *cum onere.* In other words, claiming and enjoying the benefit, the enhanced value of the mortgaged property secured, and only secured by the payment, he must lift the burden from the shoulders of the sureties who paid the money. There is no error in the decree pronounced on the petition of Sibert and others.

Another question presented on the present appeal grows

out of the claim made by the register, and allowed by the court, of commissions for making sale of the railroad and its effects. This claim of the register is rested on § 3600 of the Code of 1886, which directs that "When any property is ordered to be sold by the decree of any Chancery Court for the satisfaction of any debt secured by any mortgage or deed of trust, such sale shall in all cases be made by the register of the court ordering the same."

As we have said, the sale in this case was made under two decrees, one rendered by a Superior Court in the State of Georgia, and the other by the Chancery Court of Alabama. Part of the property lay in each jurisdiction. The bill under which the sale was effected was filed first in Georgia, and afterwards a duplicate of it was filed in Alabama. The decree was practically by consent, and it was by consent that Dorsey, the receiver, was designated and appointed to make the sale, and to make it in the City of New York. He did make the sale, reported it to the court, and it was confirmed. It is not pretended that the register did any service whatever in connection with the act of sale, or the report of it. It is not shown or claimed that he was present at the sale.

If we adhere to the letter of the statute copied above, and treat it in all cases as mandatory, it will lead us into embarrassing difficulties. If under the law the register alone can make sale, does a sale and conveyance by another person, although made under the order of the court, vest a title in the purchaser? No one would contend that it does not; for such sales are treated as made, not by the appointed salesman, but by the court. They derive their binding efficiency from the court's confirmation of the reported sale, and a title made pursuant thereto. Till confirmed they are *in fieri.*—*Haralson v. George*, 56 Ala. 295; *Ex parte* Branch, 63 Ala. 383.

The sale in this case was made under two decrees; one rendered in Georgia, and the other in Alabama. And the property, though for the purposes of this suit a unit, was partly in one jurisdiction and partly in the other. Suppose Georgia had a statute similar to § 3600 of our Code, how could the sale be effected when the one property extended into each state, as in the case before us? Many other difficulties might arise in administration, if we adhere to the strict letter of the statute, as invoked.

We have suggested one difficulty that would have been encountered, in the case we have in hand, in carrying such order or rule into effect. There are others. The sale, as we have stated, was to be made under two decrees, deriving

their several powers from separate jurisdictions, and yet the property must needs be sold in a lump. The Superior Court of Georgia rendered the first decree of sale, and therein directed Dorsey to make the sale. Was it practicable for the Alabama court to have the sale made by a person different from the one appointed to make it by the Georgia decree? The statement of the proposition is its refutation. We do not hesitate to declare the legal validity of the sale of the property although not made by the register.

We need not and do not decide absolutely whether or not the register can enforce his own selection and appointment to make the sales provided for in Section 3600 of the Code. If he can, it would seem the proper time to move in the matter would be when the decree ordering the sale is pronounced.

Our statute, § 3683 of the Code, declares the scale of commissions the register is entitled to for making sales. Section 3665 provides that "the law of fees and costs must be held to be penal, and no fee must be demanded or received except in cases expressly authorized by law." In *Tillman v. Wood*, 58 Ala. 578, it was said, "the rule of statutory construction is well settled, that statutes giving costs are not to be extended beyond their letter, but strictly construed, for the reason that costs are in the nature of a penalty." See also *Dent & McGruder v. The State*, 42 Ala. 514; *City Council v. Foster*, 54 Ala. 62; *State v. Brewer*, 59 Ala. 130; 1 Brick. Dig. 417, § 6.

Dorsey made and reported the sale in this case, and he was unquestionably entitled to commissions for making it. The register did not make the sale, and he is not entitled to commissions. To hold otherwise would be to depart from the statute, Code, § 3683, and all the rulings pronounced upon it.

We hold that the order appealed from in this case was a final order and decree under our statute, Code, § 3611, and that the appeal was properly taken.—*Lehman, Durr & Co. v. Robertson*, 84 Ala. 489.

Let one-half of the costs of appeal be taxed against the appellants, to be paid out of moneys in the hands of the receiver. The remaining half to be paid by the register, R. A. D. Dunlap.