[No. 2022.]

BLITZ ET AL. v. MORAN.

| 17  253|
d19   33|

**Mortgages—Judicial Foreclosure—Sales.**

In a judicial foreclosure of a mortgage the sheriff alone is authorized to execute the decree of foreclosure and sell the land, and it is error for the court to appoint a commissioner, other than the sheriff, to make such foreclosure sale, where such appointment is at the time objected to.

*Appeal from the District Court of Arapahoe County.*

Mr. T. J. O'DONNELL and Mr. MILTON SMITH, for appellants.

Messrs. BENEDICT & PHELPS and Mr. HORACE PHELPS, for appellee.

Mr. JOSHUA GROZIER, Messrs. WOLCOTT, VAILE & WATERMAN, Mr. WM. N. VAILE, Mr. WM. W. FIELD, Mr. JAMES C. STARKWEATHER, Mr. EDWARD L. SHANNON, Mr. THOMAS H. HOOD, *amici curiae.*

THOMSON, J.

On February 6, 1894, Simon Blitz made his promissory note to Amedee D. Moran for $3,000, due in five years, with interest at 8 per cent. per annum, payable semi-annually; and, to secure the payment of the note and interest, executed to Charles Hallowell a deed of trust conveying to him, as trustee, certain real estate which it described. The deed of trust empowered the trustee, in case of default by the maker in the payment of the note, or interest, to sell the property in the manner prescribed in the instrument. and execute a deed to the purchaser, and, after payment of the expenses of the sale, to apply the proceeds upon the note and interest. The trust deed also provided that in case of default in the payment of any installment of interest, the whole sum secured, and all accrued interest, should, at the option of the legal holder, become at once due and payable.

Afterwards, on the 14th day of December, 1896, Simon S. Blitz executed another deed of trust to Bernard Beer, as trustee, to secure the payment of a promissory note for $4,444, made by him and payable to Louis Blitz on demand, with interest at 8 per cent. per annum.

Default was made by Simon S. Blitz in the payment of the interest due Moran on the 6th day of February, 1898, and the latter elected to declare the

entire indebtedness due and payable, and thereupon brought this suit for the foreclosure of the trust deed. Beer, as trustee, and Louis Blitz, the beneficiary in the second deed of trust, were made parties defendant. The execution of that deed and the fact that it was junior and subordinate to the other, were alleged, and the foreclosure of the equity of redemption of Louis Blitz prayed.

The defendants, Beer and Louis Blitz, answered. Beer was merely the trustee, and therefore without interest, and we do not deem further notice of his answer necessary. The answer of Louis Blitz, after denying some of the facts averred in the complaint, admitted the execution of both deeds of trust, and prayed that, in virtue of his right of redemption, he be adjudged entitled to such surplus of the proceeds of the sale as might remain after payment of the amount due the plaintiff.

The hearing resulted in a decree, out of which arises the only important question in the case. The decree, after finding the facts and pronouncing judgment in favor of the plaintiff, provided for the foreclosure of the trust deed executed to Hallowell for the benefit of the plaintiff, and ordered that unless Simon S. Blitz should, within fifteen days, pay the amount of the judgment and costs, the property conveyed by the deed should be sold and the proceeds applied to the payment of the costs of the suit, the costs and expenses of the sale and the satisfaction of the judgment, the surplus to be deposited in court; and William Ferris, Jr., was appointed a commissioner to make the sale and carry the provisions of the decree into effect.

A number of exceptions were taken to the decree in which we are unable to discover any merit, and which, therefore, we dismiss from consideration. But specific objection was made to the order appointing

Mr. Ferris a commissioner to make the sale of the property, for the reason that such sale could be made only by the sheriff, to the overruling of which exception was duly taken; and this exception brings up a question which, we think, demands investigation.

Prior to the adoption of the Code of Civil Procedure, in 1877, the ancient distinctions between law and equity, both as to jurisdiction and practice, were carefully preserved. On October 24, 1861, an act of the territorial legislature was approved entitled ''An act Concerning Practice in Chancery,'' the first section of which reads as follows:

''The several district courts of this territory, in all causes of which they may have jurisdiction as courts of chancery, shall have power to proceed therein according to the mode hereinafter prescribed; and where no provision is made by this chapter, according to the general usage and practice of courts of equity or agreeably to such rules as may be established by the said courts in that behalf.''—Territorial Laws 1861, p. 181.

This act is designated as chapter 13 of the Revised Statutes of 1868, and it remained the law until the adoption of the code. By section 48 of the act the several district courts of the territory were empowered to appoint in each county, one, or, in their discretion, two, masters in chancery, whose powers and duties were enumerated in section 50. Section 46 of the same act provided that when there should be no master in chancery, or commissioner to execute a decree, the same might be carried into effect by execution or final process, according to the nature of the case, directed to the sheriff or other officer of the proper county. By section 43 commissioners were appointed by the court for the purpose of carrying into effect decrees directing the execution of deeds or other writings. Masters in chancery were, by section

50, authorized to perform the duties which, by the practice of courts of chancery, appertained to their office.

Under the old system a master in chancery was an officer of the court of chancery, and acted as an assistant to the chancellor. Among his duties were the performance of special ministerial acts directed by the court, such as making sales of property in pursuance of decree. His functions as an officer of the court of chancery were analogous to those of the sheriff as an officer of the law; the latter executing the process of the law and the former the orders of the court of which he was an officer.—*McLain v. The People,* 85 Ill. 205; *Ryan & Nevins v. Dox,* 25 Barb. 440; *Morton v. Sloan,* 11 Hump. 278; *Williamson v. Berry,* 8 How. 495.

The adoption of the code worked a radical and entire change in our judicial system. Courts of chancery and courts of law, as they were previously constituted, ceased to exist. In *Blatchley v. Coles,* 6 Colo. 82, Mr. Justice Elbert said: "The code abolished all distinctions between legal and equitable actions and substituted therefor one action by complaint. For our common-law practice and our chancery practice it substituted a code procedure." With the passing of the court of chancery passed also the office of master in chancery; and sales of property under decree must now be made by some other officer. The following is section 8 of article 5 of an act entitled "An Act Relating to Counties and County Officers," approved November 6, 1861:

"The sheriff, in person or by his under-sheriff or deputy, shall serve and execute, according to law, all processes, writs, precepts and orders issued or made by lawful authority and to him directed, and shall attend upon the several courts of record held in his county." The foregoing provision has never been

changed and is still the law in this state.—1 Mills' Ann. Stats., sec. 855.

The abolition of the court of chancery carried with it the special offices peculiar to that court, and left the sheriff as the only officer to whom the processes, writs and orders of courts may be directed. But even while the court of chancery was in existence its orders for the sale of real estate might be directed to the sheriff. As we have seen, by the terms of section 46 of the chancery act, decrees of the court of chancery might, in the absence of a master or commissioner, be carried into effect by final process directed to the sheriff. In executing decrees for the sale of property, the sheriff performed the duties of the master. But the office of master in chancery no longer exists, and the only officer now authorized by the statute to execute processes, writs, precepts and orders is the sheriff; or, in certain contingencies, the coroner acting as sheriff.

In this connection some objections are suggested, which may properly be noticed now.

1. It is said that the sheriff has no authority outside of his county; therefore, when a foreclosure embraces land lying in two counties, if the sale can be made only by the sheriff, an order of sale must issue to the sheriff of each county, thus necessitating two sales. This difficulty does not seem to have occurred to the law-makers of 1861, for they gave the sheriff equal power with a master in chancery in executing decrees of sale rendered by courts in counties where there was no master. By virtue of section 46 of the chancery act, whatever a master might do, the sheriff might do, and if the master could sell land in different counties, so could the sheriff. And under the present practice, the suggested difficulty has no existence. As we have seen, it is the duty of the sheriff to execute all orders issued or made by lawful authority, and to him

directed. Section 25 of the code provides that, in case
of the foreclosure of a mortgage, where land is situ-
ated partly in one county and partly in another, the
plaintiff shall bring his action in the county where the
greater portion is situated, and that county shall be
the proper county for trial. Now if the court may
decree the foreclosure of a mortgage notwithstand-
ing the fact that the land lies in two counties, as it is
the duty of the sheriff to execute lawful orders
directed to him, surely he would have the power to ex-
ecute an order of sale issued to him on the foreclosure
decree.

2. In the chapter concerning judgments and
executions it is provided that land sold under fore-
closure decree may be redeemed in the manner pre-
scribed for the redemption of lands sold by virtue of
executions issued upon judgments at law; and that in
case of such redemption, it shall be the duty of "the
purchaser, sheriff, *master in chancery*, or other officer
or *person*" from whom redemption takes place to
execute an instrument in writing evidencing the re-
demption, etc.—Mills' Ann. Stats., secs. 2556, 2557.
To redeem from a sale made by virtue of an execution
issued on a judgment at law the redemption money
must be paid to "the purchaser, sheriff or other offi-
cer," who sold the land.—2 Mills' Ann. Stats., sec.
2547. The suggestion is that the authority of a mas-
ter in chancery, or person other than an officer, to sell
land under a decree of foreclosure, is recognized in
the foregoing sections 2556 and 2557. But those sec-
tions were enacted when the court of chancery was in
existence; they had in view the inherent powers of
that court, and its ancient usages and practice; but in
so far as they were intended to be applicable pecu-
liarly to the old proceedings in chancery, they are
now obsolete. They have never been repealed, and
except as they constitute part of a system which has

been abolished, they are still in force. The provision
that land sold under decree of foreclosure shall be re-
deemed in the manner prescribed for the redemption
of land sold by virtue of execution issued on a judg-
ment at law, is not inconsistent with the present mode
of procedure, and remains the law. Disregarding the
reference to the machinery peculiar to a court of
chancery, we find that the redemption money must be
paid to the purchaser, sheriff or other officer who sold
the land. In the statutory provisions relating to the
sale of land on execution, from the issuance of the
execution down to the final conveyance to the pur-
chaser, the words "sheriff or other officer" are con-
stantly used; and by reference to sections 2583 and
2585 of Mills' Statutes, it will be seen that the other
officer is the coroner. The land must be sold by the
sheriff or coroner, else the redemption law, where
payment is not made to the purchaser, is nugatory.

3. Section 11 of article 6 of our constitution
provides as follows: "The district courts shall have
original jurisdiction of all cases, both at law and in
equity." The foregoing provision is made the sub-
ject of an elaborate argument. It is said that by
conferring jurisdiction in all cases in equity upon
the district courts, the constitution invested those
courts with all the powers inherent in, and incident
to, courts of equity, among which is the power to
appoint officers to carry out their decrees; and that
the legislature is without authority to adopt a code
of practice which would divest them of any of their
inherent powers. We are not sure that we understand
exactly what counsel mean; but we assume that they
intend to say that by virtue of the foregoing constitu-
tional provision, all the powers which the court of
chancery gathered to, and consolidated in, itself, dur-
ing the long period of evolution of English jurispru-
dence, inhere in our district courts. We think such

conclusion entirely unwarranted. Jurisdiction is con-
ferred by the constitution, but concerning the manner
of its exercise, nothing is said. In cases of equitable
cognizance, the district court may adjudicate and de-
termine the claims of parties before it, and decree the
proper relief; and, in doing so, it exercises the juris-
diction which the constitution confers. The consti-
tution simply invests the court with the jurisdic-
tion; it nowhere prescribes the procedure to be re-
sorted to for the purpose of securing the desired
relief, or provides the machinery by means of which
the court's decree may be enforced. Section 1 of
article 5 of the constitution vests the legislative power
in the general assembly, and its authority to enact
legislation is limited only by the provisions of the
constitution. While it may not impair the constitu-
tional jurisdiction of the court, it is not inhibited
from providing a mode of procedure in conformity
with which the jurisdiction may be made effective.
The general assembly has given us a code of prac-
tice, which nowhere undertakes to disturb the juris-
diction vested by the constitution, but which does
prescribe the method by which the jurisdiction may
be asserted. Our courts have no prescriptive powers.
Their powers are derived solely from the constitu-
tion and the statutes, and their inherent powers are
those only which are necessary to render their ex-
pressed powers effective, and enable them to exercise
their jurisdiction. Inasmuch as the law has pro-
vided an officer to execute their processes, writs and
orders, the appointment by them of another officer
to perform the same duty, is not necessary for the
purpose of rendering any expressed power effective,
and is, therefore, outside of any inherent power.

Thus far we have confined ourselves to an in-
quiry into the effect of the displacement of the old
judicial system by the new, upon the question under

consideration. But in the chapter of the code concerning the foreclosure of mortgages, we find an expression which, in our opinion, is conclusive of the legislative intent. We quote the following from the first section of that chapter:

"In actions for the foreclosure of mortgages, the court shall have the power, by its judgment, to direct the sale of the encumbered property, or as much as may be necessary, and the application of the proceeds of the sale to the payment of the costs of the court and expenses of the sale, and the amount due to the plaintiff; and if it appears from *the sheriff's return* that the proceeds are insufficient and a balance still remains due, judgment shall be docketed for such balance against the defendant, or defendants, personally liable for the debt, and shall then become a lien on the real estate of such judgment debtor, as in other cases in which execution may be issued."

It is true, as suggested, that the chapter concerning foreclosure nowhere specially provides that sales under decrees of foreclosure, shall be made by the sheriff. But, as we have seen, at the time of the adoption of the code, it was, by general statute, the duty of the sheriff to serve and execute all processes, precepts, writs and orders, issued by lawful authority, and directed to him; and a repetition in the code of the provisions of the general statute, would have added nothing to the authority which the sheriff already possessed. The code provision we have quoted assumes a sale by the sheriff. That there can be no return of the sale but his, is taken for granted; and unless he makes the sale, he cannot make the return. Nowhere in the code is a court authorized to appoint a master in chancery, or a person by any other name, to execute orders of sale issued upon decrees of foreclosure; and that the legislature understood and intended that such orders

should be executed only by the sheriff, we think appears very clearly in the language we have quoted.

Section 252 of the present code corresponds to section 227 of the original code of 1877, which commenced as follows: "There shall be but one action for the recovery of any debt, or the enforcement of any right secured by mortgage upon real estate or personal property, which action shall be in accordance with the provisions of this chapter." The remainder of that section is the present section 252. In 1879 section 229 was repealed and re-enacted, omitting the preface we have quoted. Counsel seem to attach some special significance to the fact that the preface was not re-enacted. They do not give us their opinion of the effect which that preface was intended to have upon the remainder of the chapter; but we infer that they regard it as having been a mandatory requirement that all sales under decrees of foreclosure should be made by the sheriff, for they say: "There can be no doubt but that such mandatory provisions were thus expressly repealed owing to the inconvenience resulting, or which it was reasonably anticipated would result therefrom. In other words, the plain and obvious intent of the legislature in 1879, in striking out the mandatory provisions of section 229, was to enable parties, if they so desired, to pursue the former practice in foreclosure cases, that is to say, to allow them, if they so desired, to have a special master or commissioner appointed to make the sale, to have the sale reported to the court, and to obtain a confirmation of the same." Proceeding further, counsel say that the language concerning the sheriff's return relates entirely to a deficiency judgment; and that it was intended only to enable the same court, in the same action, to decree the foreclosure of the mortgage and enter a judgment for the deficiency. It appears from the foregoing, that coun-

sel's construction of the section is that where a plain-
tiff desires a deficiency judgment in the foreclosure
suit, he must cause the sale to be made by the sheriff;
but that when he does not, he may have the decree
executed by a master or commissioner.

Counsel's opinion of the effect of what they term
the "mandatory provision," and of the intention of
the legislature in its abrogation, is widely at variance
with our own. The provision was that there should
be but one action for the recovery of any debt, or the
enforcement of any right, secured by mortgage, which
action should be in accordance with the chapter of
which the provision was a part. Section 229 of the
code of 1877 was borrowed in its entirety from the
California code; it is an exact copy of section 246 of
the original California Practice Act—section 726,
Harston's Practice; and, speaking with reference to
the provision in question, the supreme court of that
state, in *Cormerais v. Genella,* 22 Calif. 116, said that
it related entirely to the action, and not to the form of
judgment which the court might render in the action.
There is nothing in its language to warrant a suppo-
sition that it was intended to have any reference to
the contents of the decree, or the sale of the land.
But we think it was an unnecessary provision, and
that the force and effect of the section are precisely
the same without it as with it. The following is the
first section of the code:

"The distinction between actions at law and suits
in equity, and the distinct forms of actions and suits
heretofore existing are abolished, and there shall be
in this state but one form of civil action for the en-
forcement or protection of private rights, and the
redress or prevention of private wrongs, which shall
be the same at law and in equity, and which shall
be denominated a civil action, and which shall be
prosecuted and defended as prescribed in this act."

This was also the first section of the code of 1877. The preface to section 229, was merely a restatement in different language of what was said in section 1. Its application was limited to the foreclosure of mortgages; but section 1 was applicable to foreclosures equally with other civil actions; the chapter concerning foreclosures was part of the code, and by virtue of the first section, actions for foreclosure must have been instituted and prosecuted in accordance with the provisions of that chapter. And we think it probable that the reason for the repeal of the introductory provision was that it was unnecessary. Neither is there any warrant for the forced and unnatural construction that would inject into section 252, a provision which, if the plaintiff desires a deficiency judgment, requires him to have the land sold by the sheriff, but otherwise permits the appointment of a master or commissioner to make the sale. The language used in relation to the sheriff's return, and the connection in which it is used, make it evident to us that the legislature contemplated and intended a sale by the sheriff in every instance, and upon his return showing an unsatisfied balance, the docketing of a judgment for such balance against the defendant personally liable for the debt.—See *Leviston v. Swan,* 33 Calif. 480; *Cormerais v. Genella, supra.*

The rule which obtains since the adoption of the code, in relation to causes of equitable cognizance, is thus stated by Mr. Justice Elbert in *Blatchley v. Coles,* 6 Colo. 82:

"Undoubtedly the rules and principles of equity jurisprudence still obtain and apply in the adjudication of causes in their nature equitable, but equity practice, *eo nomine,* no longer exists, and can no longer be appealed to, except, perhaps, in matters upon which the code is silent."

In relation to the proceedings which follow a de-

cree of foreclosure, the code is not silent. They must, therefore, conform to its provisions, the former practice having been abrogated. In the opinion delivered in *Nevin v. Lulu & White S. M. Co.,* 10 Colo. 357, the following occurs:

"The foreclosure and sale must be a foreclosure and sale provided for in section 234 of the code." The section referred to was section 234 of the code of 1883, and is section 252 of the present code. The decision in that case was rendered long after the repeal of what counsel term the "mandatory provision" of section 229 of the code of 1877, and yet the court says, not that plaintiff may have a decree and sale in accordance with the practice in chancery if he so desires, but that the foreclosure *must* be the foreclosure and sale provided for by the code.

We are cited to *Denver B. & M. Co. v. McAllister,* 6 Colo. 261, as authority for the contention that the court may appoint a trustee, or a special master in chancery, to make sale under the decree. In that case a judicial foreclosure was sought of a trust deed, the plaintiff treating it as a mortgage. There was a decree of foreclosure. The only question in the case related to the mortgagor's statutory right to redeem, which had been denied by the lower court. The supreme court held that it was within the power of the court, under a proper bill, to order a sale of the property in accordance with the terms of the trust deed, either by the trustee named in the deed, or by another appointed by the court, from which sale there was, by virtue of the statute, no redemption; or, treating the trust deed as a mortgage, to decree a foreclosure subject to the statutory right of redemption. It was only where the remedy provided by the trust deed was proposed to be enforced, that is, where specific performance of the provisions of the trust deed was the object of the suit, that the court held that a trustee

might be appointed to make the sale; but in relation to the judicial foreclosure sought, the court said:

"The complainant having waived his right of sale under the terms and conditions of the trust deed, under which no equity of redemption would have attached, and having, by the prayer of his bill, asked that the instrument be treated and foreclosed as a mortgage, and that the usual decree be made for the sale of said mortgaged premises, the decree should have been the usual statutory decree, giving a right of redemption."

The decree was reversed with direction to the court below to enter a decree "for the sale of the property in accordance with the usual statutory mode for the sale of mortgaged premises under decrees of foreclosure." It will be observed that the direction was to enter a decree, not in accordance with chancery practice, but in accordance with the statute. It appears from the opinion that by the decree from which the appeal was taken, a special master in chancery was appointed to make the sale, and no comment upon the appointment was made in the opinion. But there was no objection to the appointment. Its validity or regularity was not in question, and there was no reason why it should be noticed. We do not think the case an authority for counsel's contention.

Before proceeding to the discussion of another question raised by counsel, we shall notice an additional authority relied on in behalf of the appellee. The following was the case of *R. R. Co. v. Sibert,* 97 Ala. 393, as it is outlined in the opinion: The Rome and Decatur Railroad Company was incorporated both in Georgia and Alabama. The purpose was to construct and operate a railroad from Rome in Georgia to Decatur in Alabama. The corporation issued its bonds and secured them by mortgage. A bill was

filed in Georgia and an auxiliary bill in Alabama, the
purpose of which was to have the railroad placed in
the hands of a receiver. Dorsey was appointed re-
ceiver, first by the Georgia court, and afterwards
by the Alabama court. One of the defendants, The
American Loan and Trust Company, with its an-
swer, in each case, filed its cross-bill, praying the
foreclosure of the mortgage and the sale of the rail-
road for the payment of the mortgage indebtedness.
Foreclosure was decreed first in Georgia, and then
in Alabama. The decree in each case was entered
by consent; and by consent it was ordered that the
sale be made in New York, by Dorsey, the receiver.
After the decree, the sale of the property, and the con-
firmation of the sale, questions arose as to the dis-
tribution of the funds, and it was those questions only
which were involved in the appeal. One of those
questions was raised by the register of the court; and
it is the decision of that question which counsel con-
tend is applicable to the case at bar. The code of
Alabama directed as follows: "When any property
is ordered to be sold by the decree of any chancery
court for the satisfaction of any debt secured by any
mortgage or deed of trust, such sale shall, in all
cases, be made by the register of the court ordering
the same." The register of the Alabama court
claimed the statutory commissions for making the
sale. The supreme court, after calling attention to
the fact that the decree was entered and the sale
made by consent; that the sale had been confirmed;
and that the register performed no service what-
ever in connection with the sale, or the report of the
sale; and after commenting upon the difficulty in the
way of adhering to the letter of the statute where the
land was to be sold in a lump under two decrees ren-
dered in different states in which the other state took
the lead, denied the register's claim, saying that the

statute fixing his commission had been held to be
the subject of strict construction; that it allowed
commissions only for making sales, and that the reg-
ister had made no sale. The sale was adjudged valid;
but the court said: ''We need not and do not decide
absolutely whether or not the register can enforce his
own selection and appointment to make the sales pro-
vided for in section 3600 of the code. If he can, it
would seem the proper time to move in the matter
would be when the decree ordering the sale is pro-
nounced.''

What there is in the foregoing opinion to lend
countenance to the appellee's contention, we confess
ourselves unable to see. All parties to the proceed-
ing acquiesced in the decree, the sale, and the con-
firmation of the sale. No objection to what was done
was made by any person interested. The only com-
plaint came from a stranger, after the sale had been
confirmed, who claimed that he had, by virtue of his
office, the legal right to make the sale, and was en-
titled to the commissions allowed for the sale, not-
withstanding it was made by another. He offered
no objection to any of the proceedings which culmi-
nated in the confirmation of the sale. The court, in
its opinion, after giving a history of the proceeding,
commencing with the appointment of the receiver,
and noticing the cross-bill for foreclosure, the decree,
the sale and the confirmation of the same, said: ''No
question is raised in the present appeal on any of the
matters noted above.'' Incidentally, although no per-
son was questioning it, the court declared the sale
legally valid; but it denied the register's claim sim-
ply and only because he had done nothing to earn his
commission; and it declined to decide that he might
not have compelled his appointment to make the sale
if he had moved at the proper time. The only ques-
tion before the court was, whether, without actually

making the sale, he was entitled to the commission; and a decision of that question can have no possible relation to the state of facts appearing in the record we are now considering.

But it is said that an authoritive decision that sales under decrees of foreclosure can be made only by the sheriff, will be disastrous in its effect, in that it will disrupt and destroy a large number of titles acquired through foreclosure sales made, in accordance with decree, by persons other than the sheriff, specially appointed for the purpose. The theory is that if the law requires such sales to be made by the sheriff, the appointment by the court of a special master or commissioner to make them, is absolutely void, and that therefore his acts under the appointment are nugatory. If it were true that under a practice long continued and unquestioned, titles have vested, which a decision at this late day against the practice would nullify, the situation would demand the most earnest attention and consideration. But we think that counsel's apprehensions as to the effect of a decision that the sheriff is the proper officer to execute a decree of foreclosure, are groundless. Let us see whether there is any cause for alarm.

Where a court has jurisdiction of the parties and of the subject-matter of the suit, its judgment or decree, within the case made by the pleadings, is valid. It may be erroneous, but it is not void. It cannot be attacked collaterally, and it can be attacked directly only in the manner and within the time prescribed by law for obtaining its review by the proper tribunal constituted for the correction of errors. If the party against whom the judgment or decree is taken, suffers the appointed time to elapse without moving towards securing its reversal, he is bound by it no matter how erroneous it may be, and he is powerless to resist its enforcement. In actions for

foreclosure, the order that the property be sold, whether by the sheriff, or by a master or commissioner appointed for the purpose, is part of the decree. If the order be that a person other than the sheriff make the sale, it is valid, because the court, having jurisdiction of the parties and the subject-matter, has the power to make it. In *Eberville v. Leadville Tunneling, Mining & Drainage Co.,* 28 Colo. 241, 64 Pac. 200—an action of ejectment—our supreme court, speaking through Chief Justice Campbell, said: ''In deraigning title, plaintiff relied upon a deed made by a court commissioner, whose authority was derived from a decree of the district court of Lake county, rendered in a cause therein pending. The decree upon its face is regular, and shows that the court had jurisdiction of the subject-matter and of the parties to the action, and power to render the particular judgment in that case.'' In *Dabney v. Manning,* 3 Hammond (Ohio) 321, the lower court, in a partition suit, directed the land sold by a person other than the sheriff. The law required the sale to be made by that officer. The executrix of the testator brought trespass against the purchasers at the sale, who had taken possession under their deed. Upon the question of the effect of the judgment, and of the proceedings under it, while it remained in force, the court spoke as follows:

''It is urged, that by law the courts are, in case of a sale being ordered, directed to require that the sale be made by the sheriff, and that, in this case, they appointed another person to make it. But this error could not have the consequence of taking away their jurisdiction, nor of rendering the sale void. They were authorized to direct a sale by one person, and they directed a sale by another. There is no just analogy between such a case, and one where the court adjudged that to be done, which the nature of the

action does not warrant, as adjudging that a defendant make a conveyance for land, or receive a beating in a personal action.''

Before leaving this case we think it worth while to observe that it appears from the statement preceding the opinion that after the sale and conveyance, the proceedings in partition were taken up by writ of error, and the order directing the sale reversed; and that thereupon the defendants abandoned the possession.

Titles acquired through judgments merely erroneous, in which the parties have acquiesced, are valid. A deed made by a commissioner, erroneously appointed by the court in a foreclosure proceeding to make sale of the property, no steps having been taken to secure a reversal of the decree, conveys the title of the party against whom the decree was rendered, and that title is unaffected by the error in the decree.

In this case the court had complete jurisdiction, and the only error consists in the appointment of a commisisoner to execute the decree. All else is regular. The decree will therefore be reversed only as to such appointment, and the cause will be remanded to the district court with instruction to modify the decree by directing the duties which it devolves upon the commissioner to be performed by the sheriff.

*Reversed.*