# Lehman, Durr & Co. *v.* Robertson, Adm'r.

## *Partial Settlement of Insolvent Estate.*

1. *When appeal lies; partial settlement of insolvent estate; final decree.*
On a partial settlement of an insolvent estate, decrees being rendered distributing among creditors the money ascertained to be in the hands of the administrator, and awarding execution in favor of each creditor, this is such a final decree (Code, § 3640) as will support an appeal to this court.

2. *Liability of administrator in case of robbery.*—An administrator is entitled to a credit, on settlement of his accounts, for moneys of which he was forcibly robbed on the highway, while going from his residence in the country to the county-site for the purpose of making a settlement; and the fact that he kept the money, less than $3,000, which he had collected at different places in the country, at his house in the country for a few weeks, instead of depositing it in a solvent savings bank in town, does not charge him with a want of ordinary care in keeping it, nor make him liable notwithstanding the robbery.

APPEAL from Bullock Probate Court.
Heard before Hon. S. T. FRAZER.

TOMPKINS, LONDON & TROY, for appellant.

FLEMING LAW, *contra.*—The credit of $2,890 was properly given the administrator.—Code, 1886, § 2664; Schouler on Executors & Adm'rs, §§ 315, 317, 320; 70 Ala. 575; 66 Ala. 35.

SOMERVILLE, J.—The motion is made to dismiss the present appeal on the ground that the settlement of the in-

solvent estate of Johns by the Probate Court, which took place on January 14th, 1888, was partial and not final in its character.   While the *settlement* is partial, and has in view only a partial distribution of the funds of the estate among creditors, *the decree or order* of distribution is nevertheless, in our opinion, final within the meaning of the statute relating to appeals from courts of probate in this State.   An appeal lies to the Supreme Court "from any final decree of the court of probate, or from any final judgment, order or decree of the judge of probate."—Code, 1886, § 3640. There are other special cases in which the right of appeal is secured without regard to the finality of the decree rendered, but these we need not particularly discuss.—Code, § 3641.

In the present case a judgment is rendered in favor of each creditor for his *pro rata* share of the moneys then ascertained to be in the hands of the administrator, and upon these judgments executions are authorized to be issued against the administrator for their enforcement.—Code, 1886, § 2248.   This completely fixes the rights of the parties, so that the court has nothing to do in order to determine or adjust their legal relations in reference to the particular matter in dispute, unless its jurisdiction is invoked to re-examine upon final settlement some item of the administrator's account included in the previous partial settlement, as provided for by section 2149 of the Code (1886).   This right to restate the administrator's account, which may never be exercised, does not, however, change the final nature of these final decrees or orders upon which executions can be issued. They still have, in other respects, the force and effects of judgments at common law.   Where this is so, as under the act of 1843, relating to annual settlements of decedents' estates, an appeal will lie as from a final judgment rendered on such annual or partial settlement, as held in *Savage v. Benham*, 11 Ala. 49.   In *Harrison v. Meadors*, 41 Ala. 274, a decree of partial distribution in favor of the distributees of an estate, upon which executions were authorized to be issued, was held to be final, and as such, sufficient to support an appeal.   If the probate court had gone no further than to allow or disallow any one or more items of the administrator's account, on a partial or annual settlement, and had stopped there, without rendering decrees in favor of creditors, on which executions could lawfully issue, it is clear that the decree of the court would be interlocutory and not final, and no appeal would lie from it.   The case of *Thompson v. Hunt*, 22 Ala. 517, was one of this kind.

The decree in question being final, will support an appeal, and the motion to dismiss must be overruled.

The only question remaing for decision is the allowance of a credit of $2,800 to the administrator, for money in his hands, belonging to the estate, of which he had been forcibly robbed. The circumstances of the robbery are given in detail, and there is nothing in the record to impeach the truth of the testimony on this subject as given by the administrator himself. He resided in the country, fourteen or fifteen miles from Union Springs, the county seat of Bullock county, where he was to make the settlement of the estate on the day of the misadventure. He had the money about his person, and had started on his journey to town. He was suddenly assailed by three men, who, after pulling him from his horse, stunned him to unconsciousness by a violent blow, and robbed him of the money.

It is insisted by the appellants that the Probate Court erred in allowing him credit for the amount thus lost on the ground that he had been negligent in keeping so much money about him at his home—that he should have deposited it in a solvent incorporated bank which the evidence shows existed at Union Springs.

The liability of an administrator as to the money of an estate in his hands, is that of an ordinary bailee for hire. He is not regarded as an insurer, and is not liable for the loss of such property where he has shown good faith, and has acted with the diligence usual with good business men under similar circumstances. Ordinary diligence, or that which persons of the same class, of average prudence, are accustomed to bestow upon their own property of like kind, and under similar circumstances, is all that the law exacts of him. And this rule is to be practically applied by a common sense standard of comparison. What is common or ordinary diligence, or the lack of it, is more frequently a question of fact than of law. "And," says Mr. Story, "in every community it must be judged of by the actual state of society, the habits of business, the general usages of life, and the dangers, as well as the institutions peculiar to the age. So that, although it may not be possible to lay down any very exact rule, applicable to all times and all circumstances; yet that may be said to be common or ordinary diligence, in the sense of the law, which men of common prudence generally exercise about their own affairs in the age and country in which they live.—Story on Bailments (8th Ed.), § 11.

[Lehman, Durr & Co. v. Robertson, Adm'r.]

We can not say that an application of this rule to the present case would impute to the appellee a want of ordinary diligence, as bailee or custodian of the money in question, such as would render him liable for its loss. The forcible taking of the money is certainly an excuse for its loss, unless it was brought about by a want of ordinary care on his part. It does not appear how the persons perpetrating the robbery had become cognizant of the fact that the appellee, Robertson, would that day carry the money to town with him. This information may have come to them without any fault on his part. Nor is it shown that the loss occurred by the mere keeping of the money at the home of the administrator for the few weeks during which he had it after collection. He had collected all of it, except about $280, in the country, near where he lived. We can not know that the peril of his being robbed would not have been quite as great had he have attempted at any time to take the money to Union Springs for the purpose of depositing it in bank. Whether he was going there to make a settlement, or to deposit the money, would not seem to increase or diminish the hazard of its loss by robbery in any perceptible measure. Hence, we can not say that his failure to deposit it, as it is contended he should have done, contributed to its loss. It may be seriously questioned, moreover, whether it would be a want of ordinary care for one residing in the country to keep so much money in his custody instead of depositing it in an incorporated bank in a small town or village, which is merely shown to be solvent, without regard to the reputation of its officers, or the known character of its management, as to which the evidence in this case shows nothing.

There is no merit in the other suggestions of error in the record. The probate judge properly allowed the administrator credit for the item of $2,890, of which he is satisfactorily shown to have been robbed, and the judgment must be affirmed.