# Provident Life & Accident Ins. Co. *v.* Elliott.

### Insurance.

(Decided December 7, 1916.   73 South. 476.)

1. **Insurance; Contract; Condition.**—A provision in a policy requiring notice in writing of accident or illness within ten days from the beginning thereof and providing that a failure to comply strictly with the notice required should limit the liability of the insurance to one-tenth of the amount otherwise payable, did not constitute a condition precedent to liability, or to the accrual of the rights of the insured, but simply created a basis, for a forfeiture of nine-tenths of the amount that would be demandable if notice had been given.

2. **Same; Receivers.**—Where a life insurance company passed into the hands of a receiver prior to the illness of the insured the receiver of the insurer was not authorized to receive notice from the insured under a provision providing that if the insured failed to give such notice he could recover only one-tenth of the amount otherwise demandable, nor did such receiver have any authority to investigate the good faith of the illness of the insured and impose the forfeiture provided by the contract.

APPEAL from the Gadsden City Court.

Heard before Hon. JOHN H. DISQUE.

Action by Nina Kyle Elliott as Executrix of the estate of J. M. Elliott, deceased, against the Provident Life and Accident Insurance Company upon one of its policies. Judgment for the plaintiff and the defendant appeals. Affirmed.

Transferred from the Court of Appeals under Acts 1911, p. 450.

SIZER, CHAMBLISS & CHAMBLISS and GOODHUE & BRINDLEY, for appellant. HUGH WHITE and W. T. MURPHREE, for appellee.

McCLELLAN, J.—The policy of insurance sued on intended to indemnify James M. Elliott, Jr., against losses from accident or disability under the conditions defined therein. The term of the policy was from December 1, 1913, to December 1, 1914. It was issued by the Provident Insurance Company of Alabama. In May, 1914, a receiver for the insuring company was appointed by the city court of Gadsden; and on or about May 21, 1914, this receiver took entire, exclusive charge of the affairs and assets of the corporation. His authority and powers in the premises are thus set forth in one of the replications (3) : "*　*　*　To take charge of all the property and assets of said company, to collect all debts due it, and sell all property, real and personal, belonging to it, and pay its debts, ratably or in full, as the funds realized may admit, and divide the residue after the said debts are paid among the classes of stockholders of said company according to the amounts owned by each and according to the preferences, if any, of the several classes of stockholders, and to perform all such other duties as might belong to such receiver in connection therewith under the direction of said court to the end that a final settlement of the affairs of said company might be made, and that said corporation, namely, the Provident Insurance Company of Alabama, might be dissolved by a decree of said court."

On April 29, 1914, the appellant, the Provident Life & Accident Insurance Company of Chattanooga, Tenn., took over the business of the Alabama corporation, and in the instrument reciting the agreement provided, among other things, that the Alabama company "should cease to do business from May 1, 1914, and shall not engage in business for a period of three years thereafter." Under the heading "General Agreements," following provisions referable to appropriate titles, defining and describing the indemnity assured and the measures thereof, this provision appears:

"(1) Written notice must be given to the company at Gadsden, Alabama, within ten days from the happening of any accident or beginning of any illness by reason of which claim is to be made, giving full name and address of the assured. Notice to any agent shall not constitute notice to the company. Failure to comply strictly with said notice requirement shall limit the liability of the company to one-tenth of the amount that would otherwise be payable."

Elliott became ill on, to-wit, June 27, 1914, and remained ill until about November 6, 1914, when he died. The notice contemplated by the quoted provision was not given; the illness of Elliott having begun after the appointment of the receiver, after the transfer of the Alabama company's business to the appellant, and after the Alabama company had ceased to do business. Before this suit was instituted, appellant paid the appellee. (plaintiff) one-tenth of the amount that would have been payable if the notice had been given. Counsel for appellant have made in their brief satisfactory statement of the object sought to be effected by the provisions as to the notice: "The object of this provision was to enable the company to provide against fraudulent claims, to enable it to make investigations promptly when the fact as to the alleged injury or illness were fresh and easy to be ascertained."

(1) It is manifest, we think, that the provisions requiring notice did not constitute a condition precedent to liability under the contract, or to the existence of a right in the insured under the contract. It but created a basis for a forfeiture of nine-tenths of the amount that would be demandable if the notice contemplated was given. The whole effect of a failure to give the notice was to toll the amount of the liability. If the notice was not given, still there was a liability left for one-tenth. In nature, the stipulation for notice created a condition subsequent, upon which a partial forfeiture was made to rest if the stipulation was not complied with.—2 Words and Phr. pp. 1400-1403; 2 Words and Phr. (N. S. p. 611; 1 Words and Phr. (N. S.) pp. 865-867. If this contract should be interpreted as creating a condition precedent, to liability under the contract, of the notice contemplated, the result would be to contradict the terms of the instrument, whereby a certain liability of one-tenth was unmistakably provided. The differences, as we see them, in the provisions in the contracts considered in the cases of *Whiteside v. North Amer. Ins. Co.*, 200 N. Y. 320, 93 N. E. 948, 35 L. R. A. (N. S.) 696, and of *Hatch v. U. S. Casualty Co.*, 197 Mass. 101, 83 N. E. 398, 14 L. R. A. (N. S.) 503, 125 Am. St. Rep. 332, 14 Ann. Cas. 290, from the provisions of the contract now under review, preclude consideration of those decisions with a view to the acceptance of the conclusions therein announced. In both of the contracts there considered there appeared terms evincing an intent to condition the existence of a contractual right upon the giving of the notice

contemplated. If, however, the contract considered in the *Hatch Case* should be accepted as identical, in the presently pertinent respect, with that involved in the case at bar, we are unwilling to accept that decision as persuasive in the premises. We do not regard the decision in *Taber v. Royal Ins. Co.*, 124 Ala. 681, 26 South. 252, as having any bearing upon the question here under review. The failure to give the notice contemplated, if there had been an opportunity to do so, was a matter of defense, which, if sustained (had there been no payment of the one-tenth), would have but tolled the amount of the recovery under the contract.

(2) It is insisted that, since the Alabama company had, previous to Elliott's illness, passed into the hands of a receiver, the notice contemplated should have been given the receiver, who had an office in Gadsden, the place whereat the stipulated notice was alone required to be given. There is nothing in the case to invite a view that the notice was ever required to be given the appellant. Our opinion accords with that entertained by the learned trial judge, viz., that the receiver was not a substitute for the Alabama company, and there was no obligation upon the insured to give him notice of his illness. The receiver was an officer, an arm, of the court, invested with only the authority and powers conferred by the court of equity under positive law and under its recognized practices.—24 Cyc. pp. 242-244; *Henry v. Henry,* 103 Ala. 582, 15 South. 916. None of the authority conferred on him contemplated that such a notice could be properly given him; nor did the authority conferred by the court comprehend the recognition or imposition of any duty on his part to avail of the opportunity, anticipated in the provisions of the contract for notice to the insurer, to investigate the bona fides of Elliott's illness, if the notice had been given to the receiver. The collection of the assets and care for the affairs of the firm in his relation as an officer of the court did not include any service or function that could justify the substitution of this receiver for the company's officers for the purpose of affording an individual, adequately authorized, upon whom the notice should have been served. The trial court so ruled. The judgment must be affirmed.

Affirmed.

MAYFIELD, SOMERVILLE, and THOMAS, JJ., concur.