(132 So. 617)

**GRAND LODGE K. P. OF ALABAMA et al. v. SHORTER et al.**

6 Div. 659.

Supreme Court of Alabama.

Jan. 22, 1931.

Rehearing Denied March 12, 1931.

Fort, Beddow & Ray and G. Ernest Jones, and J. S. Edson, all of Birmingham, and Hill, Hill, Whiting, Thomas & Rives, of Montgomery, for appellants.

Altman & Koenig, of Birmingham, and Inzer, Inzer & Davis, of Gadsden, for appellees.

BOULDIN, J.

The appeal is from a decree appointing a receiver or fiscal agent of the endowment funds of a fraternal insurance company.

The equity of a like bill was declared as early as January 19, 1928, in these words: "Its object is the protection and preservation of a trust fund, which is being depleted and dissipated fraudulently and wrongfully, to the irreparable injury of policyholders who have a property right interest in such funds. Very clearly, a policyholder under these circumstances has the right to invoke equity's jurisdiction for the protection of trust funds, and may maintain a bill of this character: Howze v. Harrison, 165 Ala. 150, 51 So. 614; Jasper Land Co. v. Wallis, etc., 123 Ala. 652, 26 So. 659; 1 Pom. Eq. Jur. (4th Ed.) § 151; Thos. A. Edison v. Edison Phonograph Co., 52 N. J. Eq. 620, 29 A. 195; Chicago Mut. Life Ass'n v. Hunt, 127 Ill. 257, 20 N. E. 55, 2 L. R. A. 549." McCall, Atty. Gen., v. Grand Lodge Knights of Pythias, 217 Ala. 196, 115 So. 254, 255. That bill was not sustained because filed by the Attorney General.

The present bill, filed by policyholders, was considered on appeal from ruling on demurrer, and its equity sustained by the full court in Grand Lodge K. of P. v. Shorter, 219 Ala. 293, 122 So. 36.

But for rather persistent references of appellant's counsel to certain features of that decision as the views of the minority, it would seem unnecessary to note that the division in the court related solely to the necessity to make parties respondent the officers of respondent corporation charged with the breaches of trust outlined in the decision.

On reversal for want of these necessary parties, they were brought in by amendment, and the proceeding for a receiver heard de novo, all parties being accorded a full hearing.

The law of the case, fully considered and stated in our former decisions, supra, and reargued on this appeal, is here now reaffirmed. We see no need for further discussion of same.

As for the facts, the record on this appeal, including pleadings, proceedings of the insurance department, reports of actuaries and accountants, and many affidavits on both sides, consists of 1,074 pages, with a printed copy of the Constitution and by-laws of the order attached.

This record fully sustains the showing made on former appeal, reviewed on page 297 of the opinion of 219 Ala., 122 So. 36, 40, and held to present a proper case for a receiver.

The diversion and misappropriation of mortuary funds, trust funds for policyholders, aggregating $57,219.63, at the date of former appeal, is shown to have grown and accumulated from year to year despite the orders and warnings of the insurance department and its actuaries.

Finally, it appears this has been charged off as an available fund for payment of death claims, and a scheme of amortization devised.

We deem it proper to take note of this amortization plan.

The endowment fund, arising from payment of a monthly assessment or premium of $1 from each policyholder, is segregated into an expense fund, and a mortuary fund, the latter being the permanent trust fund held and invested for payment of death claims.

The amortization plan by which the expense fund is increased to 30 cents out of each dollar, and a payment of 10 cents back into the mortuary fund to repay said misappropriations is, in no sense, a reinstatement of the funds so misappropriated. It is a mere bookkeeping device by which the beneficiaries of the trust fund replace their own losses. They are depleting the current mortuary fund to make good past losses. The net result is the same as charging it off as a permanent loss.

Whether, in any event, the order, acting strictly within constitutional rules, and with the approval of a majority of the policyholders duly expressed, can bind policyholders to thus condone their losses, we do not consider at this time. But whatever the thousands of unadvised or misadvised colored policyholders, acting through the Grand Lodge meetings, or otherwise, may have the authority to do, we do consider it important to say that any movement of the sort participated in and accomplished through the trusted officers guilty

of such wrongs should be viewed with that distrust and jealous regard for the interest of beneficiaries always obtaining in courts of equity in dealing with transactions of persons standing in confidential and fiduciary relations. That the whole question of reinstating the trust fund so depleted, and providing proper safeguards for the future, may be duly investigated and proper action taken, makes the call for a competent and disinterested agent of the court the more insistent.

It now appears that pending the suit the diversion and misappropriation of these mortuary funds has persistently continued, so that, at the time of the last hearing for a receiver, such depletion had increased to $119,809.04. Much of this has been for counsel fees for respondents in this suit; and this in the main since the decision on former appeal.

■ The present appeal does not call for a statement of the principles of law governing an allowance from trust funds to cover counsel fees incurred by the trustee in defending a suit wherein he is charged with a devastavit. Suffice to say that, pending a suit in which jurisdiction over such fund has been invoked, and after such jurisdiction has been sustained, such expenditures as here appear, without an order of court, constitute, prima facie at least, a breach of trust. A trustee, assuming to determine for himself the merits of the suit, or to act on the advice of any one other than the court having rightful jurisdiction, puts himself and all others participating therein in position calling for full investigation and appropriate action by some one with no interest to serve save the protection of parties in all their equities. Thus appears a further necessity for a receiver.

Many other questions, such as returns on investments of trust funds, numerous charges of graft, other misuse of trust funds, the system of vouchers and bookkeeping in vogue, disregard of advice and orders of the insurance department, not here discussed in detail, are in the nature of cumulative matters to be duly considered and dealt with as the equities shall appear.

■■ This court is quite sensible that only a real necessity warrants a receivership in a case of this kind. We are dealing with a going business, one now solvent so far as payment of present death claims is concerned. This is not a static trust, one of fixed properties to be conserved, but involves incoming and outgoing funds of an insurance business in operation. Handling this fund is closely related to all the activities of the order. The thousands of policyholders having an interest in the fund, conditional upon their keeping up their policy payments, are deeply concerned, along with these complainants, who have personal interest which a court of equity, as we have held, will protect in an individual action. Present solvency means little.

The faithful gathering in, safe investment of, and protection against misappropriation, waste, and extravagance, of this mortuary fund is of vital importance to those who through the years have paid and shall pay in this fund against the day when their death claims mature and multiply.

To reinstate the depleted fund so far as may be, to provide or superintend the setting up of safeguards for the future, and turn the fund back to the order at the earliest practical date with a minimum of expense, is the end to be accomplished by the receivership.

■ Parties situated as here disclosed are due some remedy under the laws of their state, and a receivership appears to be the only adequate remedy.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.