142 So. 514

**CARTER et al. v. MITCHELL et al.**

3 Div. 978.

Supreme Court of Alabama.

May 19, 1932.

Rehearing Denied June 23, 1932.

John W. Altman, of Birmingham, and Inzer, Inzer & Davis, of Gadsden, for appellants.

Hill, Hill, Whiting, Thomas & Rives, of Montgomery, for appellee Grimes, as receiver.

Adams and Butts who were respondents in the original bill, and all were interested in the preservation of the mortuary fund. Carter, as receiver, appeared in this case as the representative of the Jefferson court, and to protect the interests of which he was receiver. The interest they all had was only to protect the funds of the order, and none of them had a direct personal interest in the final decree. Their appeal was for the joint benefit of all those thus interested, and we think that their joint assignments of error showed such interest as justifies a consideration of them by this court. An appeal by an intervener so interested is permissible. Louisville Mfg. Co. v. Brown, 101 Ala. 273, 13 So. 15; 3 Corpus Juris, 639.

On the 25th day of August, 1930, complainants filed the bill in this cause, and prayed for the appointment of a receiver of the Grand Lodge, Knights of Pythias of Alabama, an Alabama corporation and a fraternal benefit society for colored people. On the same day the court appointed a receiver, and on the 26th day of August he qualified as such. The bill alleged that there was pending in the circuit court of Jefferson county a suit by other members of the order seeking the appointment of a receiver of a portion of its properties, but that such court had made no valid appointment of a receiver, and none had qualified or was in charge of its effects, and a large part of its property was not in any manner involved in that suit.

On September 27, 1930, a plea to the jurisdiction of the court was filed setting up the fact that the Jefferson court had appointed a receiver, which appointment was then in effect, and a motion was made to vacate the appointment of the receiver in Montgomery.

On November 13, 1930, the court overruled the motion to vacate such appointment. On November 21, 1930, this court granted a petition for a rule nisi to the judge of that court to show cause why a writ of prohibition for want of jurisdiction should not issue to him and directing that further proceedings in said receivership be suspended. Upon the hearing of such petition this court held on January 22, 1931, that the Jefferson court had made an effective order appointing a receiver still in full force, and that the Montgomery court had exceeded its jurisdiction in making the appointment, and we also denied a rehearing on March 12, 1931. Strother v. McCord, 222 Ala. 450, 132 So. 717.

The pleadings and proof show that by a provision of the constitution the endowment funds of the order, consisting of the mortuary and expense funds, shall be kept separate from the Grand Lodge funds, and shall not be used by the Grand Lodge. Constitution, art. 28. Each member was required to pay monthly $1 to the endowment treasurer, 80 cents of which went into the mortuary fund,

FOSTER, J.

This appeal was taken by Carter, as receiver appointed by the Jefferson court, and

and 20 cents the expense fund of that department. Article 31. It appears that this was subsequently amended so that 70 cents went to the mortuary fund, 20 cents to the expense, and 10 cents to amortize the amount which had been paid out of that fund for Grand Lodge expense in violation of the constitution. In addition to such sum of $1, they also paid 20 cents a month for the use of the Grand Lodge. Article 25.

A diversion of mortuary funds was one cause assigned for the appointment of a receiver by the Jefferson court. Grand Lodge v. Shorter, 219 Ala. 293, 122 So. 36; Id., 222 Ala. 404, 132 So. 617.

This is upon the theory that such mortuary fund is a trust which can, pursuant to the constitution of the order, be used for death claims only. It is the fund required by sections 8449, 8450, Code. The latter section of the Code also prohibits its use for the payment of debts and obligations other than death claims. When the receiver was appointed in the Montgomery court, that court approved the appointment by him of an actuary to determine the net worth of that fund as compared with the requirements of section 8449. That report showed its value to be far in excess of such requirements. The receiver also reported certain outstanding debts of the Grand Lodge, and other claims not chargeable against the mortuary fund.

The court made various orders directing the receiver to pay items of expense incident to the continued operation of that department and the employment of the officers then in charge of its affairs, and to pay certain claims owing by the Grand Lodge, but which were not in fact properly chargeable to the mortuary fund. Our view, as expressed in former opinions, is that such disbursements were improperly made, and that to the extent that such orders related to the mortuary fund, they were laid in error. But though erroneous, if the receiver acted upon them in good faith, his personal liability is not fixed by error in their making. For a receiver is the representative of the court, acting as its administrative officer, and is subject to its valid orders. Sullivan Timber Co. v. Black, 159 Ala. 570, 48 So. 870; High on Receivers (4th Ed.) § 1; 53 Corpus Juris, 135; Provident Life & Accident Ins. Co. v. Elliott, 198 Ala. 230, 233, 73 So. 476; Louisville Mfg. Co. v. Brown, 101 Ala. 273, 13 So. 15.

So that when a receiver disburses funds in his hands by virtue of a valid, though erroneous, order, and under direction of the court, he will be protected in carrying out such instructions, and the court order under which he acts will be a complete defense to personal liability in any action or proceeding, 23 R. C. L. 79–80, note 7; 53 Corpus Juris, 139, 140–142, 309, 173; Mont-

gomery, Trustee v. Enslen, Receiver, 126 Ala. 654, 666, 28 So. 626; State ex rel. Sullivan v. Reynolds, 209 Mo. 161, 107 S. W. 487, 15 L. R. A. (N. S.) 963, 123 Am. St. Rep. 468, 14 Ann. Cas. 198. And this is true though such order is reversed on appeal after such disbursement is made. High on Receivers, § 178; 53 Corpus Juris, 173.

But, to protect the receiver, who is a part of the court, the order must be valid. It must be within the power and jurisdiction of the court. 53 Corpus Juris, 175. If within such jurisdiction, the order is not void, nor subject to collateral attack, and should be obeyed by the receiver, though it is erroneous. But where the court is wholly without jurisdiction to appoint a receiver, its orders relating to his administration of the estate are void. 53 Corpus Juris, 140; Steenrod v. L. M. Gross Co., 334 Ill. 362, 166 N. E. 82.

But there is a well-defined distinction between a total want of jurisdiction and an excess of jurisdiction. The following is taken from our case of Broom v. Douglass, 175 Ala. 268, 279, 57 So. 860, 864, 44 L. R. A. (N. S.) 164, Ann. Cas. 1914C, 1155: "By 'excess of jurisdiction,' as distinguished from the entire absence of jurisdiction, we understand and mean that the act, though within the general power of the judge, is not authorized, and therefore void, with respect to the particular case, because the conditions which alone authorize the exercise of his general power in that particular case are wanting; and hence the judicial power is not in fact lawfully invoked." To the same effect is Bradley v. Fisher, 13 Wall. (80 U. S.) 335, 20 L. Ed. 646, 651.

The case of Crawford v. Gordon, 88 Wash. 553, 153 P. 363, L. R. A. 1916C, 516, is in some respects similar to this one. A state court had appointed receivers. Thereafter a federal court appointed receivers of the same property which took charge of and were operating it—a railroad. During such operation the federal court at first sustained its right to make such appointment, and authorized its receivers to buy some railroad equipment for part cash and partly on credit. The court thereafter reversed its ruling, and held that it had no right thus to proceed, and ordered its receivers to deliver the property to the receivers of the state court. The state court held that the order of the federal court was not void; that the federal court had the primary right to determine its own jurisdiction, and while its receivers were in charge of the property they were at least de facto officers of a court of competent jurisdiction.

It seems to us that it is sound principle that though the court has erroneously determined that certain facts are not sufficient to prevent it from exercising its ordinary function to appoint a receiver, though such order of the court is in real excess of its

authority (but it had decided otherwise) and does not confer full protection upon others so dealing with the receiver appointed by a court which had directed such dealings, and though such parties could upon a reversal of such erroneous order be required to make restitution to the funds of the receivership, it does not follow that the court which appointed the receiver, and ordered him to make the payments, could, either because of a reversal of its opinion as to such facts curtailing its authority, or because this court has so determined, thereafter require the receiver personally to make restitution. When a court has the right to decide as to its own jurisdiction, its decision in favor of that jurisdiction, if within its ordinary powers, will have the same effect and conclusiveness as would its decision on any other matter, especially when dependent on a fact which it is required to ascertain. 15 Corpus Juris, 852, 853; Toy Toy v. Hopkins, 212 U. S. 542, 29 S. Ct. 416, 53 L. Ed. 644.

But when the court has no power to sit, nor has general jurisdiction over that nature of proceeding or over the parties, it cannot make any effective order. 15 Corpus Juris, 853; Stephens v. State, 162 Ala. 680, 50 So. 42; Forbus v. State, 158 Ala. 41, 48 So. 592.

We note in this connection that we did not hold that it was not within the general powers of the Montgomery court to appoint the receiver, but merely that the appointment of one by the Jefferson court had the effect of making such order of the former court an *excess of jurisdiction* due to that circumstance. We feel that such expression was an accurate statement of the result of our views. Broom v. Douglass, supra; Bradley v. Fisher, supra.

We are also free to admit that the legal effect upon this question of the order of the Jefferson court from which an appeal had been taken, and due to the circumstance that bond had not then been executed, was not without difficult solution. We are not at all impressed with the argument that it was so clearly erroneous as to show a meddling interference by that court. But, on the other hand, it was such as to justify a fair difference of opinion. It was within the jurisdiction of that court in the first instance to determine whether the facts existed which had the effect of withholding from it the power to proceed. And before a substantial compliance with the decree in that respect, it could have been reviewed in this court by some appropriate proceeding.

We are of the conclusion that the receiver should have credit, in making his final settlement, for payments which he made on the orders of his court, when such payments were made before this court issued its rule nisi and restraining order.

On the 20th day of November, 1930, these appellants Butts and Adams, and others, presented to this court their petition for a writ of prohibition to be directed to the judge of the Montgomery court, restraining him from further proceeding in said cause, and to vacate the order appointing said receiver because of the appointment which the Jefferson court had made, thereby depriving the Montgomery court of jurisdiction. This court on November 21st ordered the rule nisi and that the judge of that court be restrained and prohibited from making or entering any further orders or decrees until the further order of this court. Upon a return to the rule, and on a hearing, this court, on January 22, 1931, ordered the writ of prohibition, as prayed, and denied a rehearing on March 12, 1931.

The court seems literally to have observed the rule nisi and restraining order, by not making any further order or decree until that petition was finally disposed of, and the writ of prohibition finally issued, and then only to cause the receiver to make final settlement of his receivership. But the receiver did not seem to understand that such restraining order applied to him in respect to his authority or duty to obey the order of his court, which had been made prior thereto, for the payment of the moneys in his hands. The petition to this court showed that the Montgomery court had exceeded its jurisdiction in the appointment of a receiver, because one had been appointed by the Jefferson court, and the latter had done so for the reason alleged (among others) that the officers of the Grand Lodge were misappropriating the mortuary fund by paying expenses of the Grand Lodge in violation of their duty. The petition to this court also alleged that the receiver of the Montgomery court had employed said Grand Lodge officers, or some of them, and had illegally paid out of the trust fund indebtedness created by them, and which was not a proper charge against it, and that the court is proceeding to permit additional similar use of said funds, and to incur a great expense against it. We interpret the meaning and purpose of the restraining order to prevent the further creation of charges against said trust fund or their payment, which was the subject of so much complaint. We had then in effect held (Grand Lodge v. Shorter, 219 Ala. 293, 122 So. 36), and later reaffirmed (222 Ala. 404, 132 So. 617, January 22, 1931), that such misuse of the trust fund was contrary to law.

In the latter case, we pointed to the fact that pending the suit in Jefferson county the diversion and misappropriation had continued, and much of it was so misused since the decision on former appeal in that

case. Now it appears that after we issued the rule nisi and restraining order on the petition for prohibition, the receiver continued to make such use of the trust fund, doubtless assuming that he had the right, and that it was his duty to do so under the orders which had been made by his court. But those orders ceased to be effective upon the issuance of the restraining order from this court. He had no more authority than his court which gave him orders. He was but an arm of that court, and was dependent upon its continued authority to sustain his continued authority. The court could not have taken further action, and did not, and he had no more power than it had at any given time. And when this court finally issued a peremptory writ its effect extended from the date of the restraining order, by which the status quo of such fund was preserved. 50 Corpus Juris, 712, 713; Ex parte Ray, 45 Ala. 15.

Appellants also assign as error (and insist in brief upon such assignments) the alleged interlocutory orders made by the court as follows: August 29, 1930, September 5, 1930, and September 15, 1930.

The first ordered the receiver (a) to retain the deposits in the several banks where they were then deposited; (b) that he retain the agents, employees, and clerical forces engaged in conducting the fraternal, endowment, and other functions of the corporation, and that he pay them all unpaid salaries and wages, and such as shall accrue by the week or month; (c) that he employ an auditor to audit each department of the corporation; (d) that his employment of counsel be confirmed; and (e) that his bond be increased.

The order of September 5, 1930, directed him to pay certain items or claims then due and payable, and certain expenses of the receiver, and others that shall accrue.

The order of September 15, 1930, directed (a) the receiver to employ a certain actuary to examine the affairs of the company and report the amount of an adequate reserve or net beneficiary fund which the court would decree to be kept separate and distinct for the benefit certificates; and (b) that the amounts which had been expended by the receiver pursuant to the orders of the court, and such as shall be hereafter paid, may be charged against and deducted from any of the funds in his possession.

 Appellees contend that those orders are in essence final decrees, and that when this appeal was taken six months had expired after each of them was made, and that they cannot be now assigned as error. They concede that when an appeal is taken from a final decree all interlocutory orders may be assigned, though the time has expired in which an appeal may be taken from them, if such an appeal is available from the final de-

cree. Section 6079, Code; Fogleman v. Nat. Surety Co., 222 Ala. 265, 132 So. 317; Sims, Chan. Pract. § 583.

But they insist that the three several decrees mentioned are final in effect, and that when an appeal is taken from a final decree, appellant cannot assign as error any other final decree rendered more than six months before the appeal was taken—such is the rule in this state. Harris v. Johnson, 176 Ala. 445, 58 So. 426; Coker v. Coker, 208 Ala. 239, 94 So. 308; United States S. & L. Co. v. Leftwich, 132 Ala. 131, 31 So. 474; Foley v. Leva, 101 Ala. 395, 13 So. 747.

 The test of the finality of a decree sufficient to support an appeal is that it ascertains and declares the rights of the parties and settles the equities, and is not controlled by the fact that the cause remains in fieri in respect to other matters. Freeze & Co. v. Teal, 216 Ala. 380, 113 So. 84; Ex parte Elyton Land Co., 104 Ala. 88, 15 So. 939; De Graffenried v. Breitling, 192 Ala. 254, 68 So. 265; Coker v. Coker, supra.

In Coker v. Coker, supra, the administration of an estate of a deceased was proceeding in equity. The court made an allowance for the compensation of attorneys in the course of administration, and ordered it paid. The order was held to be a final decree from which an appeal could be prosecuted. Lehman v. Robertson, 84 Ala. 489, 4 So. 728; Weaver v. Cooper, 73 Ala. 318.

In De Graffenried v. Breitling, supra, a general assignment had been made. The court declined to make any allowance for the assignee. This was held to be a final decree. And in Clifford v. Montgomery, 202 Ala. 609, 81 So. 551, a decree allowing compensation to a receiver was held final from which an appeal would lie by parties adversely interested.

In Rome & Decatur R. Co. v. Sibert, 97 Ala. 393, 12 So. 69, the court was operating a railroad by a receiver. It ordered certain claims paid by the receiver. From this order, the railroad company appealed. It was held to be a final decree from which such appeal would lie. 53 Corpus Juris, 309 (240). Though, in the case of Dorsey v. Sibert, 93 Ala. 312, 9 So. 288, in the same receivership, it was held that the receiver himself was not such a party as could appeal from an order made by his own court, directing him to pay certain claims. An appeal will lie from a decree as final which ascertains an amount due by a trust estate in chancery and orders it paid. Louisville Mfg. Co. v. Brown, 101 Ala. 273, 13 So. 15.

In Engle v. Bronaugh, 208 Ala. 162, 93 So. 868, it is held that a decree confirming a receiver's final report and directing him to pay out the money is a final decree.

■ We also observe that as long as a cause is in fieri the court may recast an interlocutory decree, not of final effect. The thirty-day limit of section 6636, Code, only applies to final decrees. Sawyer v. Edwards, 200 Ala. 26, 75 So. 338.

■ When weighed by the foregoing rules, we think that the order of August 29, 1930, is but an administrative order, and did not undertake to pass upon and allow any particular claim. It is, we think, interlocutory and continuing, but under it the receiver was authorized to act. To the extent that it authorized him to pay the officers of the lodge their salaries out of the mortuary fund it was erroneous, and should be reversed. We also think that payments thus made should be restored by the parties to this suit to whom the payments were made, though by its authority. High on Receivers, § 178, p. 212.

■ But the order of September 5, 1930, directs the payment forthwith of certain specifically named items of account which had been presented to him and recommended by the auditors. To that extent the order was final and complete as much as a decree could be with respect to such items. 53 Corpus Juris, 309. Though it also directed him to incur and pay certain items of personal expense, that did not affect the finality of its other features; but if that aspect of it could be now reviewed, it would be controlled by other principles which we will later discuss.

■ The decree of September 15, 1930, proceeded upon the idea that the court itself could set up a mortuary fund less than that required by the constitution, and could use the balance of the endowment fund to pay expenses of that department and of the fraternal department, which we think, and have held, was an erroneous construction of the constitution. It also provided for an actuary to make a report in line with that conception. It was an administrative procedure not final in effect, and was not carried into operation by the court to the extent of setting up any such fund, because of the rule nisi issued from this court. But in addition to such feature of that order it directed the receiver to charge the amounts which he had paid or should pay, as theretofore ordered, against any of the funds in his possession.

While that feature of the order may have also been but an administrative direction, and while it was error to pay any of such claims out of the mortuary fund, payment had, already, been directed, and doubtless had been acted on, though such payments should have been made out of the expense and Grand Lodge funds only. It was the direction made in the order of August 29th to pay those amounts which was injurious to the mortuary fund, and not the later one of September 15th. But such order was laid in error and should be reversed.

We are therefore at the conclusion that on this appeal the decrees of August 29th and of September 15, 1930, should be reversed to the extent and for the reason we have indicated.

■ We are free to say that the decree of September 5th was, in our opinion, not only erroneous, but harmful to the extent that it ordered the payment of those claims, when they were not proper claims against the mortuary fund, and when the receiver had no cash sufficient to pay them, except as transferred from that fund. But the decree finally disposed of those matters, and no appeal was taken in the time allowed by law. It was within the power of the court to make it, and the receiver was due to obey it.

The order of September 5th directed the payment of the items shown in the attached auditor's report, "except each of the items of salary for June, July and August, 1930, for the officers named in said report." We assume that such salary amounts were excepted in the order of September 5th, because they were included in general terms in that of August 29th, as to which we have held that order was reversible error. It also appears that the receiver continued to pay their salaries and expense accounts until the date of the rule nisi as well as afterwards. Authority to do so is in the order of August 29th, which we have held is laid in error, and therefore while the receiver was properly allowed credit for such items as he paid prior to the rule nisi, those persons who are parties to the suit, and who thus improperly received funds of the endowment department, should by a decree in this cause be ordered to restore them as hereafter specifically declared.

■ It also appears that the order of September 5th directed the payment of specified office expenses of such officers. For the reasons we have stated, we cannot review that order in that respect. But such officers should restore all amounts of expense paid them not specified in the order of September 5th.

■ The right and duty of the court in respect to the items of personal expense incurred by the receiver, his fee or compensation, and a fee for the services of his attorneys, auditors, and actuary are all controlled by a different rule of law and equity.

In our case of Sullivan Timber Co. v. Black, 159 Ala. 570, 48 So. 870, 876, this court very fully and carefully treated the subject. We take the following from that opinion: "Compensation should not be denied a receiver because the court had no power to appoint, if he was in fact appointed in a legal manner and has in good faith discharged the duties of such receiver. The court will protect him

while acting under the orders of the court, and may award compensation out of the estate or property intrusted to him for his reasonable services, notwithstanding the order of appointment is subsequently reversed and the bill under which he is appointed is dismissed. But it has been held that, if the appointment of a receiver was wholly unauthorized and unwarranted, compensation may be denied."

██ The opinion then refers to a former case of this court, Wills Valley Min. & Mfg. Co. v. Galloway, 139 Ala. 276, 35 So. 850, which refers to the conflict of authorities; some courts holding that complainants must compensate the receiver; others tax a part against complainants and a part against the trust fund, and hold that his compensation and expenses are not of course taxable as costs against complainant. But, in the opinion thus referred to, the question was left unsettled. Whereas in the Black Case, supra, the opinion settles the question for Alabama in this language: "After a full examination of all the authorities, including text-books, and the decisions of this court and of the courts of other states, and in the light of the aid afforded by the splendid briefs of counsel for the respective parties upon this question, we conclude that it is more just and equitable to leave the whole matter in the sound discretion of the chancellor, subject to be revised by the appellate court only in case of abuse of the discretion, or where the act of the chancellor is clearly arbitrary, and not in the proper exercise of the authority vested in him by the statutes and the decisions of this court. What is said on this subject in the last report of the case of Wills Valley, etc., Co. v. Galloway [155 Ala. 628], 47 So. 141, was correct, when applied to the facts of that case; but the facts of this case readily distinguish it from the Galloway Case."

██ In that case, as in this one, the court was dealing with a trust estate, subject to administration in equity by a receiver, and not with the property of an innocent party improperly sequestered. That opinion on pages 591, 592, and 593 of 159 Ala., 48 So. 870, uses much argument appropriate to this case, but not necessary to repeat. It held that as the chancery court was possessed of a sound discretion to charge the trust fund with the compensation and expense of the receiver, including attorneys' fees and costs of court, and that it was not arbitrary in so doing, and that the trust fund was considerable; therefore to that extent the decree was affirmed.

On the authority of that case, we are not willing to say that the court abused its discretion in directing the payment of personal expenses of the receiver and his reasonable compensation, his reasonable attorneys' fees, reasonable compensation for his auditors and actuary, and costs of court. The trust fund is shown to be fully ample to pay such charges, without impairing the security of the insurance certificate holders. At the end of receivership, it was shown to have a net worth of approximately $620,000, which is largely in excess of the requirements of sections 8449, 8450, Code.

██ But the attorneys' fees allowed should not cover their services for representing the complainants in bringing this suit nor sustaining it in court, nor in defending the proceedings in this court for prohibition (Saulsbury v. Lady Ensley Coal, Iron & R. Co., 110 Ala. 585, 20 So. 72), but only for their services in representing the receiver during the period extending from the time of his appointment (Henry v. Henry, 103 Ala. 582, 15 So. 916) to the date when we issued our rule nisi, and for services in making his settlement and the hearings before the court on such settlement. Henry v. Henry, supra. Nor do we think the receiver should have compensation for services rendered after our rule nisi was effective extending thence to the time when he was ordered to make final settlement, but may include a reasonable sum for making such settlement. Henry v. Henry, supra.

██ The court should also consider the fact that such claims are not contemplated by the constitution of the order nor by statute as payable out of this fund; and that their allowance is for services rendered in a cause which we have held was in excess of the court's jurisdiction.

It is also said in Sullivan Timber Co. v. Black, supra, 159 Ala. 587, 48 So. 870, 876, that in determining such questions the court should consider "the benefits and advantages [of the receivership], accumulations, or losses received from or the result of the efforts, labor, attention or want of the same, on the part of the receiver."

██ During the receivership, the moneys of the mortuary fund have been expended for causes other than death claims and the upkeep and expense of the real estate in which it is partly invested, as follows:

| | |
|---|---|
| Auditor and actuary | $ 5,796.71 |
| Miscellaneous | 604.80 |
| L. R. Grimes (the receiver) | 367.90 |
| Realty expense paid through expense fund | 813.42 |
| Paid out for other departments | 9,291.32 |
| | $16,874.15. |

We think that the carrying charges of the real estate in which that fund is invested, or the expense of its upkeep and commissions for collecting rents, are chargeable to it rather than to the expense fund of the endowment department. It is not an expense of operating that department, but is inherently deduct-

ible from the values of the mortuary fund before its worth can be determined, and treated just as depreciation in value of such realty or of the other investments of that fund. We have not here set out such realty expense, except that which the auditors have listed as paid through the expense fund—$813.42. If paid out of the expense fund, it should be deducted from the amount that fund owes the mortuary fund, or, as tentatively done by the auditors, be classed as a disbursement from the mortuary fund. This we think is a proper disposition of that item.

■ ▉▉▉ The item "miscellaneous, $604.80," has no explanation, and unless the receiver can show it is for items paid by order of his court, or for expenses of the receivership, which we have already discussed, he should not be credited with it as a payment from the mortuary fund, unless it is otherwise shown to be chargeable to it.

▉▉▉ In respect to the sum of $9,291.32 paid for other departments, we understand that this arose by transferring sums to that aggregate from the mortuary to the expense fund of the endowment department or to the Grand Lodge fund. It is not therefore clear to us whether any definite amount of it was paid by the receiver by order of the court. The court did not order such transfer in terms, but did order the payment of certain items out of any money in the receiver's hands. Such payments were apparently made after a transfer of the money from the account of the mortuary fund, and the items so paid were not charged to that fund, but only the amounts so transferred.

A transfer of such funds or their use in payment of the expense of the Grand Lodge and the operation of the endowment department was contrary to law, and the receiver should not have credit for such sum unless it was done by orders of his court, and before this court by its rule nisi put a stop to them. The orders of the court extend to the payment of certain items of expense and debts of the Grand Lodge. If the receiver has so kept his accounts as that he cannot show that all of said sum of $9,291.32, or some definite amount of it, was in fact paid under the orders of his court, before they became ineffective by our order, he should be chargeable with it all, or such amount as is not controlled by such orders. The other expense and Grand Lodge funds must be first exhausted. To the extent that the receiver does not show payment of the $9,291.32 by order of his court, he should be charged with it as cash in hand in addition to the sum shown by the figures which have been accepted as correct.

▉▉▉ The amount of cash and deposits in banks and on hand of the mortuary fund at the close of the receivership is shown by the figures which counsel have accepted as correct to be $100,637.95, of which the receiver has paid into the Jefferson court $60,000, leaving $40,637.95, of which $5,000.21 was deposited in banks which are in liquidation.

We are not impressed with the contention that the receiver should be charged with such losses as may accrue due to the failure of the two banks, in view of the fact that the receiver's court had ordered him to permit such funds to remain on deposit in the banks where deposited when his receivership began. 53 Corpus Juris, 155 et seq.

No objection has been made to the orders which directed the payment of death claims out of the mortuary fund. So that nothing we have said should be construed as applicable to those items.

▉▉▉ When a decree is reversed and it appears that the parties to the cause have been paid sums of money under its authority, it is the duty of the court to order their restitution. This may be done by the appellate court in reversing the decree, or by the chancery court upon a remandment of the cause. Carroll v. Draughon, 173 Ala. 338, 56 So. 209, and cases there cited; High on Receivers, § 178, p. 212.

Since the cause must be otherwise remanded, such amounts may be determined and decreed by that court to be restored. This will include those sums paid under the order of August 29th, not specifically authorized in that of September 5th, whether such payments were made before or after November 21st, the date of the rule nisi and restraining order. But the receiver should have credit on his accounts for the amounts paid out of the mortuary fund by authority of and specified in the order of September 5th, and those so paid by authority of the order of August 29th, prior to November 21st; but should be charged with those paid out of the mortuary fund after the latter date.

For the reasons which we have indicated, we find that there was also error in the final decree of June 18, 1931, from which the appeal was taken in ordering payment out of the mortuary fund of additional sums to cover the salary of Blount, Brazier, Mabry, Sheppard, Mason, Smith, Brown, Weaver, Kigh, Ward, and expense incurred by them or any of them.

The final decree of June 18, 1931, and the interlocutory decrees of August 29 and September 15, 1930, are reversed. The cause is remanded to the circuit court for final disposition.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.