69 So.3d 898 (2011)
R.L.
v.
J.E.R. and S.L.R.
No. 2100050.
Court of Civil Appeals of Alabama.
March 25, 2011.
*899 Jayme K. Amberson, Anniston, for appellant.
Gerald O. Sills of Stubbs, Sills & Frye, P.C., Anniston, for appellees.
THOMPSON, Presiding Judge.
R.L. ("the mother") appeals from a judgment of the Calhoun Juvenile Court terminating her parental rights to I.M.L. ("the child").[1] Six days after entering the judgment terminating the mother's parental rights, the juvenile court entered a second judgment allowing J.E.R. and S.L.R. ("the adoptive parents") to adopt the child.
The record indicates the following. The mother lives in Georgia. The child's birth certificate indicates that he was born in Riverdale, Georgia, on January 30, 2009; the mother testified, however, that she believed the child was born on January 31, 2009. After the child was born, he lived with the mother in Georgia.
The mother testified that she became aware that an arrest warrant had been issued for her and that she was facing up to six months in prison for violating the terms of her probation.[2] The mother testified that her aunt told her that the adoptive parents were unable to have children and wanted to adopt a baby. Because the mother was not getting along with her own mother at the time, she said, she agreed to allow the adoptive parents to have temporary custody of the child while she was in jail.
On August 29, 2009, the adoptive parents, who live in Piedmont, Alabama, traveled to Georgia to take physical custody of the child. On that day, the mother signed a document titled "Power of Attorney Delegating Parental Rights," which allowed the adoptive parents to have custody of the *900 child for six months unless earlier revoked by the mother. The mother's signature does not appear on a separate document in the record titled "Single Parent Consent to Adoption," and the mother testified that she did not intend for the adoptive parents to adopt the child. However, the adoptive parents testified that they believed the mother had intended for the arrangement to be permanent, and their intention at that time was to adopt the child. The adoptive parents returned to Piedmont with the child on August 29, 2009.
The mother was incarcerated shortly after the adoptive parents took custody of the child. On September 17, 2009, the adoptive parents filed in the Calhoun Probate Court a petition seeking to adopt the child. The mother was served with the petition while she was still incarcerated in Georgia. The mother testified that she served about one month in jail for the probation violation. After the mother was released from jail, the probate court held a hearing on the matter of the child's adoption. The mother attended the hearing and contested the adoption. On December 16, 2009, the probate court entered an order transferring the matter to the juvenile court "for further disposition."
On June 3, 2010, the juvenile court held a hearing during which evidence was presented ore tenus. At the outset of the hearing, the mother moved to dismiss the proceedings because, she said, the child's home state was Georgia; thus, she asserted, the juvenile court had no jurisdiction over the child. The juvenile court denied the mother's motion to dismiss, stating that the issue of jurisdiction had not been raised in the probate court and noting that, at the time of the juvenile court hearing, the child had been in Alabama for nine months.
On September 9, 2010, the juvenile court entered a judgment finding that the child was dependent and terminating the mother's parental rights. On September 15, 2010, the juvenile court entered a judgment granting the adoptive parents' petition to adopt the child. On September 22, 2010, the mother filed a motion for relief from the judgment terminating her parental rights pursuant to Rule 60(b)(4), Ala. R. Civ. P., on the ground that the judgment was void for lack of jurisdiction. Pursuant to Rule 59, Ala. R. Civ. P., she also filed a postjudgment motion to alter, amend, or vacate the judgment terminating her parental rights. The postjudgment motion to alter, amend, or vacate was deemed denied by operation of law on October 6, 2010. See Rule 1(B), Ala. R. Juv. P. We note, however, that a motion filed pursuant to Rule 60(b), Ala. R. Civ. P., is not subject to being denied by operation of law. See Rule 59.1, Ala. R. Civ. P.; see also Ex parte Keith, 771 So.2d 1018, 1021 (Ala. 1998). Even though the juvenile court never ruled on the mother's Rule 60(b)(4) motion, a motion filed pursuant to Rule 60(b) does not affect the finality of a judgment or suspend its operation. Ex parte R.S.C., 853 So.2d 228, 233-34 (Ala.Civ.App. 2002). Therefore, the mother's appeal to this court was not premature and was timely filed.
The mother contends that the judgment terminating her parental rights to the child is void because, she says, Georgia is the child's home state; thus, she asserts, the juvenile court did not have jurisdiction over the child. This action began with a petition for adoption, filed in the probate court. The jurisdiction of Alabama courts in adoption matters is set forth in § 26-10A-3, Ala.Code 1975, which provides:
"The probate court shall have original jurisdiction over proceedings brought under the chapter. If any party whose consent is required fails to consent or is unable to consent, the proceeding will be transferred to the court having jurisdiction over juvenile matters for the limited *901 purpose of termination of parental rights. The provisions of this chapter shall be applicable to proceedings in the court having jurisdiction over juvenile matters."
(Emphasis added.) The mother refused to consent to the adoption; therefore, pursuant to § 26-10A-3, the probate court was required to transfer the matter to the court having jurisdiction to determine whether the mother's parental rights were due to be terminated.
Alabama has adopted the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), codified at § 30-3B-101 et seq., Ala.Code 1975, to govern child-custody disputes involving, or potentially involving, more than one jurisdiction. A "child-custody proceeding" is defined in the UCCJEA to include not only divorce actions involving the custody of a child, but also, among others, "dependency, ... [and] termination of parental rights" actions in which the issue of child custody is addressed. § 30-3B-102(4). The term "child-custody proceeding" does not include an adoption proceeding. Id.
In D.B. v. M.A., 975 So.2d 927, 937 (Ala.Civ.App.2006), this court held that, in a consolidated adoption and custody case such as the case at bar, when a juvenile court must determine whether to terminate a parent's parental rights before adoption proceedings can continue, the UCCJEA applies to the custody determination. Section 30-3B-201 of the UCCJEA sets forth the following relevant requirements that must be met for a trial court to have subject-matter jurisdiction over a child-custody determination:
"(a) Except as otherwise provided in Section 30-3B-204, a court of this state has jurisdiction to make an initial child custody determination only if:
"(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
"(2) A court of another state does not have jurisdiction under subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 30-3B-207 or 30-3B-208, and:
"a. The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
"b. Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;
"(3) All courts having jurisdiction under subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 30-3B-207 or 30-3B-208; or
"(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3).
"(b) Subsection (a) is the exclusive jurisdictional basis for making a child custody determination by a court of this state."
The UCCJEA defines "home state" as "[t]he state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." § 30-3B-102(7), Ala.Code 1975. The definition further notes that "[a] temporary absence of the *902 child or any of the mentioned persons is part of the period." Id.
At the time the adoption proceeding was initiated, aside from the child's "temporary absence" from Georgia while he was in the adoptive parents' custody, the child had lived with his mother in Georgia for six consecutive months immediately preceding the filing of the adoption petition, and the mother continued to live in Georgia during the child's "temporary absence"; thus, Georgia was the child's home state. See § 30-3B-102(7), Ala.Code 1975. Even if we were to consider the termination-of-parental-rights proceeding as a separate proceeding, the probate court transferred the matter to the juvenile court on December 16, 2009, approximately three and one-half months after the adoptive parents took the child from Georgia; thus, the child had not resided in Alabama for six consecutive months immediately preceding the litigation. Therefore, we conclude that Georgia was the child's home state at the commencement of the proceedings. See § 30-3B-102(7).
Because Alabama was not the home state of the child, an Alabama court could not make an initial custody determination unless (1) Georgia had declined to exercise jurisdiction, (2) the child and at least one parent or person acting as the child's parent had significant connections with Alabama, and (3) substantial evidence concerning the child's care, protection, training and personal relationships was available for the Alabama court's review. See § 30-3B-201(a)(2), Ala.Code 1975, (emphasis added). There is no evidence in the record to indicate that a Georgia court had declined to exercise jurisdiction over the issue of the child's custody; thus, an Alabama court could not properly make a determination regarding the mother's parental rights, which would necessarily involve an initial child-custody determination as to the child.[3]
Based on the record before us and the authority cited earlier, we hold that the juvenile court did not have jurisdiction to terminate the mother's parental rights. "Without subject-matter jurisdiction, any judgment entered in the action is void." Eagerton v. Second Econ. Dev. Coop. Dist. of Lowndes County, 909 So.2d 783, 788 (Ala.2005). A void judgment will not support an appeal. T.B. v. T.H., 30 So.3d 429, 433 (Ala.Civ.App.2009). Accordingly, we dismiss the mother's appeal as being from a void judgment, and we remand this cause to the juvenile court to vacate the judgment terminating the mother's parental rights.
Although the mother did not explicitly appeal from the juvenile court's judgment of adoption, this court must sua sponte recognize and address the juvenile *903 court's lack of subject-matter jurisdiction to enter that judgment, because "`this Court is duty bound to notice ex mero motu the absence of subject-matter jurisdiction.'" Baldwin County v. Bay Minette, 854 So.2d 42, 45 (Ala.2003) (quoting Stamps v. Jefferson County Bd. of Educ., 642 So.2d 941, 945 n. 2 (Ala.1994)).
In Ex parte C.L.C., 897 So.2d 234, 238 (Ala.2004), our supreme court held that, generally, a juvenile court does not have jurisdiction to enter a judgment of adoption. The court in C.L.C. explained its holding as follows:
"`"Adoption is not merely an arrangement between the natural parents and adoptive parents, but is a status created by the state acting as parens patriae, the sovereign parent. Because the exercise of sovereign power involved in adoption curtails the fundamental rights of the natural parent[s], the adoption statutes must be closely adhered to."' Ex parte Sullivan, 407 So.2d 559, 563 (Ala. 1981) (quoting Davis v. Turner, 337 So.2d 355, 360-61 (Ala.Civ.App.1976)).
"`Once jurisdiction has attached in one court, that court has the exclusive right to continue its exercise of power until the completion of the case, and is only subject to appellate authority.' Wesson v. Wesson, 628 So.2d 953, 953 (Ala.Civ.App.1993). `[W]hen [a] court has no power to sit, nor has general jurisdiction over that nature of proceeding or over the parties, it cannot make any effective order.' Carter v. Mitchell, 225 Ala. 287, 292, 142 So. 514, 518 (1932).
"The `primary jurisdiction over adoption proceedings is in the probate court.' B.W.C. v. A.N.M., 590 So.2d 282, 283 (Ala.Civ.App.1991). `[U]nless [a] juvenile court acquire[s] jurisdiction over a petition to adopt by the "transfer" mechanism found in § 12-12-35, [Ala.] Code 1975,[4] the juvenile court [is] without authority to grant an adoption.' B.W.C., 590 So.2d at 283.
"The probate court kept exclusive jurisdiction over the issue of whether or not to grant or deny the petition to adopt. Wesson, supra. The probate court, pursuant to the authority of § 26-10A-3, sent the case to the juvenile court for the strictly limited purpose of addressing the issue of termination of parental rights, and the juvenile court acquired only that limited jurisdiction over this particular case. See Martin v. Martin, 173 Ala. 106, 55 So. 632 (1911), Ex parte Pearson, 241 Ala. 467, 3 So.2d 5 (1941), and B.W.C., supra. The juvenile court did not acquire jurisdiction over the issue of whether to grant the petition to adopt, as that jurisdiction remained exclusively in the probate court. See Wesson and B.W.C., supra.

"Therefore, in purporting to grant the petition to adopt, the juvenile court exceeded its jurisdiction and entered only a void judgment. See State ex rel. Payne v. Empire Life Ins. Co. of America, 351 So.2d 538 (Ala.1977), Ex parte McKivett, 55 Ala. 236 (1876), and Knight v. Taylor Real Estate & Ins. Co., 38 Ala.App. 295, 83 So.2d 353 (1955). A related but independent analysis is that, in exceeding the limited mandate of the probate court, the juvenile court exceeded its jurisdiction and entered only a void judgment. See Ex parte Alabama Power Co., 431 So.2d 151 (Ala.1983), and Smith v. State, 852 So.2d 185 (Ala.Crim. App.2001)."
Ex parte C.L.C., 897 So.2d at 237-38.
In this case, no party to the adoption proceeding filed a motion to transfer the *904 case to the juvenile court, therefore, § 12-12-35, Ala.Code 1975, the statute creating the "transfer" mechanism referred to in the quote above, is not applicable here. Pursuant to the authority of § 26-10A-3, the probate court sent the case to the juvenile court strictly for the limited purpose of addressing the issue of termination of parental rights, and the probate court retained jurisdiction over the adoption petition. Therefore, on the authority of C.L.C., we conclude that the juvenile court did not have jurisdiction to enter the judgment of adoption. Accordingly, that judgment is also void, and the cause is remanded for the juvenile court to vacate the adoption judgment as well.
APPEAL DISMISSED WITH INSTRUCTIONS TO JUVENILE COURT.
PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.
NOTES
[1] The judgment also terminated the parental rights of the child's father. The identity of the father was unknown; the child's birth certificate, which is included in the record, does not include information regarding the father. Notice of the termination hearing was served by publication to any putative father. No one claiming to be the child's father has participated in these proceedings at any level.
[2] Although it is not entirely clear from the record on appeal, from the mother's testimony it appears that she had been placed on probation after a conviction for possession of marijuana.
[3] The exception to the inability of a court to exercise jurisdiction when the prerequisites of § 30-3B-201 are not met is when a court exercises "emergency jurisdiction" under the UCCJEA. Section 30-3B-204(a), Ala.Code 1975, provides that an Alabama court "has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." The UCCJEA defines "abandoned" as "[l]eft without provision for reasonable and necessary care or supervision." § 30-3B-102(1), Ala.Code 1975. In this case, the mother had made provision for the child's reasonable and necessary care or supervision by making arrangements for the adoptive parents to have custody of the child while the mother was incarcerated and by executing the "Power of Attorney Delegating Parental Rights." There is no allegation that the adoptive parents have abandoned the child or that the child has been mistreated, abused, or threatened with abuse while in the adoptive parents' custody. Thus, the juvenile court's "emergency jurisdiction" would not have been triggered in this case.
[4] The "transfer" mechanism provided for in § 12-12-35 requires the filing of a motion by a party to the probate court adoption proceeding to transfer the action to the district court.